UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT,
*A Project of the Urban Justice Center, Inc., on Behalf of Itself and Its Clients,*
HIAS, INC.,
*On Behalf of Itself and Its Clients,*
ALLAN HAKKY,
SAMANEH TAKALOO,
JOHN DOES Nos. 1-4 and
JANE DOE No. 1,

    Plaintiffs,

v.

DONALD J. TRUMP,
*In His Official Capacity as President of the United States,*
DEPARTMENT OF HOMELAND SECURITY,
DEPARTMENT OF STATE,
OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,
JOHN F. KELLY,
*In His Official Capacity as Secretary of Homeland Security,*
REX W. TILLERSON,
*In His Official Capacity as Secretary of State,*
and
MICHAEL DEMPSEY,
*In His Official Capacity as Acting Director of National Intelligence,*

    Defendants.

Civil Action No. TDC-17-0361

**MEMORANDUM ORDER**

On February 7, 2017, Plaintiffs filed this action alleging that Executive Order 13769, "Protecting the Nation from Foreign Terrorist Entry into the United States" ("Executive Order"),

82 Fed. Reg. 8977 (Jan. 27, 2017), violates the First and Fifth Amendments to the United States Constitution, U.S. Const. amends. I, V; the Immigration and Nationality Act, 8 U.S.C. §§ 1101-1537 (2012); the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb-4 (2012); the Refugee Act, 8 U.S.C. §§ 1521-1524; and the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (2012). Pending before the Court is a Motion for Leave to Proceed Under Pseudonyms filed by Plaintiffs John Does Nos. 1-4 and Jane Doe No. 1 ("Doe Plaintiffs"). The Motion was deemed filed on February 13, 2017. Defendants have stated that they will not file an Opposition to the Motion. For the reasons set forth below, the Motion is granted.

The Federal Rules of Civil Procedure provide that the "title of the complaint must name all the parties." Fed. R. Civ. P. 10(a); *see also* D. Md. Local R. 102.2(a) (requiring that complaints "contain the names and addresses of all parties and the county of residence of any Maryland party"). This requirement serves the public's important interest in open judicial proceedings. *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014). However, "in exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym." *Id.* In deciding whether to allow a party to proceed under a pseudonym, the court must balance "the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Id.* at 274. The United States Court of Appeals for the Fourth Circuit has identified a non-exhaustive list of factors that the court should consider:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
> (3) the ages of the persons whose privacy interests are sought to be protected;

    (4) whether the action is against a governmental or private party; and
    (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobsen*, 6 F.3d 233, 238 (4th Cir. 1993).

    Most of these factors weigh in favor of the Doe Plaintiffs' position. First, the Doe Plaintiffs have plausibly demonstrated that filing without pseudonyms creates a risk of retaliatory harm to themselves or innocent family members who live abroad. John Doe No. 2, a United States citizen who fled Iraq after members of his family were killed and who arrived in America as a refugee in 2009, has filed for a family-based visa to permit his parents to immigrate to the United States. Because his parents live in a dangerous region of Iraq and have "received letters threatening to harm them because they are [his] parents," John Doe No. 2 fears that disclosure of his role in this case could jeopardize the safety of his parents in Iraq. Decl. John Doe No. 2 ¶ 8. Likewise, John Doe No. 4, a United States citizen originally from Iraq, and his wife Jane Doe No. 1, a United States citizen who fled Iraq as a refugee, believe that disclosure of their participation in this case could endanger her parents, who now have valid immigration visas to come to the United States but remain in Iraq as a result of the Executive Order. Noting that her brother's departure to the United States led a neighbor to make a statement perceived to be a threat against her father's life, Jane Doe No. 1 fears that her parents could be targeted if the lawsuit leads people in Iraq to learn of her parents' relationship to the United States, including their plans to travel here. She also fears that use of her identity in this litigation could lead to the disclosure of the fact that her father is a Sunni Muslim living in a predominantly Shiite neighborhood in Iraq, which could lead to additional targeting of him in Iraq.

    Both John Doe No. 1, a lawful permanent resident who immigrated to the United States from Iran, and his wife, an Iranian national who has been approved for but has not yet received a

spousal immigration visa, are non-practicing Muslims. Because in their community in Iran, conversion from Islam is "deemed apostasy and is punishable by death," Decl. John Doe No. 1 ¶ 6, ECF No. 5-1, John Doe No. 1 fears that disclosure of his participation in this case could result in retaliation or harassment against his wife, who remains in Iran, or himself, in the event that he visits her there. John Doe No. 3, a lawful permanent resident from Iran whose wife remains in Iran while her visa application is pending, has also articulated a fear that if his participation in this case is revealed, his wife may be harassed by the Iranian government. Fearful of such retaliation against himself as well, John Doe No. 3 has canceled a planned trip to Iran to visit his wife.

Potential retaliatory physical or mental harm against individuals in another country can form the basis for permitting plaintiffs to use pseudonyms. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1063, 1065, 1071 (9th Cir. 2000) (considering possible retaliation by the Chinese government against both Chinese national plaintiffs working in Saipan and their family members who reside in China as grounds to support the use of pseudonyms). Here, the facts establish that the Doe Plaintiffs' family members, as well as certain Doe Plaintiffs themselves, face a risk of retaliation, physical harm, or harassment in foreign countries because of their connection to the United States or their religious identity. This factor thus weighs heavily in favor of the Doe Plaintiffs' request to use pseudonyms in this case. *See Doe v. U.S. Dep't of State*, No. 1:15-cv-01971, 2015 WL 9647660, at *3 (D.D.C. Nov. 3, 2015) (permitting the plaintiff, an Iraqi national seeking to have his Iraqi Special Immigrant Visa application processed expeditiously, to use a pseudonym to protect his family in Iraq from "anti-U.S. insurgents").

Second, these same facts also establish that the Doe Plaintiffs' request to proceed under pseudonyms is made "to preserve privacy in a matter of sensitive and highly personal nature." *James*, 6 F.3d at 238. Specifically, they highlight a privacy concern relating to religious faith and their relatives' immigration status that, if disclosed, could jeopardize their safety in foreign countries. Both topics have been deemed to be sufficiently sensitive and personal in nature to support plaintiffs' use of pseudonyms under appropriate circumstances. *See, e.g.*, *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. Unit A Aug. 1981) (holding that plaintiffs challenging the constitutionality of school prayer could proceed anonymously in part because "religion is perhaps the quintessentially private matter"); *Hispanic Interest Coal. of Alabama v. Governor of Alabama*, 691 F.3d 1236, 1247 & n.8 (11th Cir. 2012) (identifying cases in which courts protected the disclosure of information about the plaintiffs' immigration status). Because the Doe Plaintiffs' relatives are currently awaiting approval of, issuance of, or the ability to use immigrant visas to enter the United States and have allegedly been stymied by the Executive Order, they presently have a problematic immigration status that, if disclosed, could dissuade the Doe Plaintiffs from pursuing their rights in court. *Cf. Lozano v. City of Hazelton*, 496 F. Supp. 2d 477, 510 (M.D. Pa. 2007) (considering the plaintiffs "problematic immigration status" as undocumented immigrants as a basis to permit the use of pseudonyms in a case challenging local ordinances relating to housing and employment), *aff'd in relevant part*, 620 F.3d 170 (3d Cir. 2010), *vacated and remanded on other grounds*, 563 U.S. 1030 (2011). Similarly, disclosure of the religious identity of certain Doe Plaintiffs and their family members creates the potential for physical harm from individuals abroad and could deter the Doe Plaintiffs from pursuing their rights. The Doe Plaintiffs' desire to avoid disclosure of such information thus goes beyond

protecting them from the "annoyance and criticism that may attend any litigation." *James*, 6 F.3d at 238.

Third, the fact that this case has been brought against the federal government, rather than private parties, supports permitting the Doe Plaintiffs to proceed anonymously. Courts are more likely to permit plaintiffs to proceed under a pseudonym when they are pursuing a claim against the government rather than a private individual. *See Doe v. Alger*, 317 F.R.D. 37, 41 (W.D. Va. 2016). The rationale for this convention is that although the mere filing of a lawsuit against a private party may cause the defendant reputational and economic harm, such that fairness requires the identification of the plaintiffs, the government is not vulnerable to similar reputational harm, particularly in a case involving a challenge to the constitutional, statutory, or regulatory validity of government activity. *See S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979); *Alger*, 317 F.R.D. at 41; *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). Use of pseudonyms is more likely to be appropriate in cases challenging government activity because there is both "arguably a public interest in a vindication of . . . rights" and a risk of stigmatization of the plaintiff, who often represents a minority interest. *EW*, 213 F.R.D. at 111. Here, where the Doe Plaintiffs challenge the validity of an Executive Order, not the conduct of particular government employees, permitting plaintiffs to use pseudonyms is more likely to be justified. *See Alger*, 317 F.R.D. at 41.

A countervailing factor is the heightened public interest in the disclosure of the plaintiffs' identities in suits against the federal government. *See Public Citizen*, 749 F.3d at 274. The Court concludes, however, that the public interest in the identity of the Doe Plaintiffs is reduced because the claim is a pure legal challenge to the Executive Order, such that the individual plaintiffs play only a minor role in the litigation. Moreover, the public already has significant

information about the parties in this case because there are two organizational plaintiffs and two individual plaintiffs whose names have been disclosed. Thus, on balance, the fact that this case is brought against the government weighs in favor of the Doe Plaintiffs.

Fourth, the risk of unfairness to the opposing party from allowing the Doe Plaintiffs to proceed anonymously is minimal. Notably, Defendants do not oppose the Doe Plaintiffs' Motion and have offered no claim of prejudice. As discussed above, reputational harm is not an issue in a case against the federal government. Moreover, any prejudice to Defendants is limited because the Doe Plaintiffs are challenging the constitutional and statutory validity of a governmental order, such that the questions presented in this case "do not depend on identifying the specific parties" but instead are "purely legal." *Doe v. Pittsylvania Cty.*, 844 F. Supp. 2d 724, 731 (W.D. Va. 2012) (quoting *Doe 1 v. Merten*, 219 F.R.D. 387, 390 (E.D. Va. 2004)); *accord Lozano v. City of Hazleton*, 620 F.3d 170, 195 (3d Cir. 2010) (agreeing with the district court's conclusion that the defendant would not be prejudiced by allowing the plaintiffs to proceed under pseudonyms where information about their identity "was not central to their claims"), *vacated and remanded on other grounds*, 563 U.S. 1030 (2011); *Doe v. Barrow Cty.*, 219 F.R.D. 189, 194 (N.D. Ga. 2003). This factor weighs strongly in favor of the Doe Plaintiffs.

The only factor that weighs against the Doe Plaintiffs is the age of the individuals whose privacy interests are at issue, because those who may be vulnerable to retaliation abroad are all adults. On balance, particularly because of the potential safety risk to the Doe Plaintiffs' family members abroad from threats in their home countries, the Court finds that the factors that support permitting the Doe Plaintiffs to proceed anonymously substantially outweigh the presumption of public access. Having reached this conclusion based on the facts discussed above, the Court

need not address the Doe Plaintiffs' additional claims of potential retaliation and whether they support the requested relief.

Accordingly, it is hereby ordered that the Doe Plaintiffs' Motion for Leave to Proceed Under Pseudonyms is GRANTED.

Date: March 1, 2017

THEODORE D. CHUANG
United States District Judge