**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT ("IRAP"), *et al*., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 8:17-cv-00361-TDC |
| DONALD TRUMP, in his official capacity as President of the United States, *et al*., | ) ) ) ) | |
| Defendants. | ) ) | |
| IRANIAN ALLIANCES ACROSS BORDERS, *et al*., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 8:17-cv-02921-TDC |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al*., | ) ) ) ) ) | |
| Defendants. | ) ) | |
| EBLAL ZAKZOK, *et al*., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:17-cv-02969-TDC |
| DONALD TRUMP, in his official capacity as President of the United States, *et al*., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR CERTIFICATION OF THIS COURT'S MAY 2, 2019 MEMORANDUM OPINION AND ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF DISCOVERY**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND .......................................................................................................... 3

ARGUMENT .............................................................................................................. 5

I.    The Court Should Certify Its Order Denying the Motion to Dismiss for
      Interlocutory Appeal. ............................................................................................ 5

      A.    This Court's Order Turns On Controlling Questions of Law. ................ 7

      B.    There Is Substantial Ground for Difference of Opinion as to the Controlling
            Questions of Law Identified in This Motion....................................... 10

            1.    *Mandel* Is the Appropriate Standard, Not Rational Basis Review........... 12

            2.    The Supreme Court Has Conclusively Held that the Proclamation
                  Satisfies the Rational Basis Test. .............................................. 13

            3.    Plaintiffs' Complaints Do Not Plausibly Allege a Valid Claim
                  Against the Proclamation.......................................................... 15

            4.    Plaintiffs Cannot State Due Process and Establishment Clause
                  Claims Based on the Denial of Entry to Others........................ 19

II.   The Court Should Stay Discovery Pending Completion of All § 1292(b)
      Proceedings. ........................................................................................................ 21

III.  At the Very Least, There is No Basis for Denying Cerification if the Court Permits
      Plaintiffs to Begin Discovery ............................................................................ 25

CONCLUSION............................................................................................................ 26

# TABLE OF AUTHORITIES

## CASES

*Al Maqaleh v. Gates*,
   620 F. Supp. 2d 51 (D.D.C. 2009) ....................................................................... 5, 11

*Alharbi v. Miller*,
   368 F. Supp. 3d 527 (E.D.N.Y. 2019), *appeal filed*,
   No. 19-1570 (2d Cir. May 28, 2019) ...................................................... 10, 15, 16, 20

*Applegate, LP v. City of Frederick, Md.*,
   179 F. Supp. 3d 522 (D. Md. 2016) ........................................................................ 14

*Armour v. City of Indianapolis*,
   566 U.S. 681 (2012).................................................................................................. 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................... 9

*Butler v. DirectSAT USA, LLC*,
   307 F.R.D. 445 (D. Md. 2015).................................................................................... 7

*Cheney v. United States District Court*,
   542 U.S. 367 (2004).................................................................................................. 23

*Coal. for Equity Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*,
   Civil No. CCB-062773, 2015 WL 4040425 (D. Md. June 29, 2015)................................. 7, 11

*Emami v. Nielsen*,
   365 F. Supp. 3d 1009 (N.D. Cal. 2019) .......................................................... 10, 20

*FCC v. Beach Communications, Inc.*,
   508 U.S. 307 (1993).................................................................................................. 18

*Fernandez-Roque v. Smith*,
   671 F.2d 426 (11th Cir. 1982) .................................................................................... 6

*Fiallo v. Bell*,
   430 U.S. 787 (1977)......................................................................................... 11, 12, 20

*Goodman v. Archbishop Curley High Sch., Inc.*,
   195 F. Supp. 3d 767 (D. Md. 2016) ........................................................................ 10

*Hawaii v. Trump*,
   859 F.3d 741 (9th Cir. 2017)..................................................................................... 3

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010)...................................................................................................... 11

*In re Trump,*
  874 F.3d 948 (6th Cir. 2017) .......................................................................... 6, 10

*In re United States,*
  138 S. Ct. 443 (2017) ........................................................................................ 6

*IRAP v. Trump,*
  857 F.3d 554 (4th Cir. 2017) ............................................................................. 3

*IRAP v. Trump,*
  905 F.3d 287 (4th Cir. 2018) ............................................................................. 3

*IRAP v. Trump,*
  138 S. Ct. 2710 (2018) ...................................................................................... 3

*Kerry v. Din,*
  135 S. Ct. 2128 (2015) ........................................................................... 9, 12, 20

*Kleindienst v. Mandel,*
  408 U.S. 753 (1972) ..................................................................................... 1, 12

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-gestione Motonave Achille Lauro in
  Amministrazione Straordinaria,*
  921 F.2d 21 (2d Cir. 1990) ................................................................................ 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  572 U.S. 118 (2014) ......................................................................................... 21

*Lynn v. Monarch Recovery Mgmt., Inc.,*
  953 F. Supp. 2d 612 (D. Md. 2013) ................................................................. 10

*Mamani v. Berzain,*
  825 F.3d 1304 (11th Cir. 2016) ......................................................................... 7

*Mohawk Indus., Inc. v. Carpenter,*
  558 U.S. 100 (2009) ....................................................................................... 5, 7

*Reese v. BP Expl. (Alaska) Inc.,*
  643 F.3d 681 (9th Cir. 2011) ........................................................................... 10

*Smith v. Murphy,*
  634 F. App'x 914 (4th Cir. 2015) ...................................................................... 7

*Trump v. Hawaii,*
  138 S. Ct. 2392 (2018) ............................................................................. *passim*

*United States ex rel. Knauff v. Shaughnessy,*
  338 U.S. 537 (1950) ......................................................................................... 20

*United States ex rel. Michaels v. Agape Senior Cmty., Inc.*,
   848 F.3d 330 (4th Cir. 2017) ................................................................. 5, 7

*Yamaha Motor Corp. v. Calhoun*,
   516 U.S. 199 (1996) ............................................................................... 7

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ........................................................................... 11

**STATUTES**

28 U.S.C. § 1292 ...................................................................................... *passim*

**REGULATIONS**

Proclamation No. 9645, *Enhancing Vetting Capabilities and Processes for Detecting
   Attempted Entry into the United States by Terrorists or Other Public Safety Threats*,
   82 Fed. Reg. 45,161 (Sept. 27, 2017) .................................................... 1

Proclamation No. 9723, *Maintaining Enhanced Vetting Capabilities and Processes
   for Detecting Attempted Entry Into the United States by Terrorists or Other
   Public-Safety Threats*,
   83 Fed. Reg. 15,937 (Apr. 10, 2018) ..................................................... 17, 19

**OTHER AUTHORITIES**

9 J. Moore & B. Ward, Moore's Federal Practice 110.25 (2d Cir. 1995) ....................................... 7

16 Charles Alan Wright et al, Federal Practice and Procedure § 3930 (3d ed. 2008) .............. 6, 11

## INTRODUCTION

Defendants respectfully request that, pursuant to 28 U.S.C. § 1292(b), this Court certify for interlocutory appeal its memorandum opinion and order denying in part Defendants' motion to dismiss.  *See* Memorandum Opinion, ECF No. 276 (May 2, 2019) ("Mem. Op."); Order, ECF No. 277 (May 2, 2019) ("May 2 Order").[1]  In *Trump v. Hawaii*, 138 S. Ct. 2392, 2421 (2018), the Supreme Court upheld the validity of Proclamation No. 9645, *Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public Safety Threats*, 82 Fed. Reg. 45,161 (Sept. 27, 2017).   Specifically, the Supreme Court held that constitutional challenges to the "exclusion of aliens"—a "fundamental act of sovereignty"—are governed by the deferential standard of review set forth in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), or at the very most, by rational basis review.  *See Hawaii*, 138 S. Ct. at 2420.    *Mandel* permits courts to engage in a "circumscribed judicial inquiry," limited to "whether the Executive gave a 'facially legitimate and bona fide' reason for its action."  *Hawaii*, 138 S. Ct. 2419 (quoting *Mandel*, 408 U.S. at 770).  Similarly, rational basis review involves a "highly constrained" inquiry that requires "uphold[ing] the policy so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds."  *Id.* at 2420.  Applying those standards, the Supreme Court confirmed that the Proclamation must be upheld:  "It cannot be said that it is impossible to discern a relationship to legitimate state interests or that the policy is inexplicable by anything but animus.  . . .  [B]ecause there is persuasive evidence that the entry suspension has a legitimate grounding in national security concerns, quite apart from any religious hostility, we *must accept* that independent justification."  *Id.* at 2420-21 (emphasis added, citation omitted).

This Court, in denying the Government's motion to dismiss as to Plaintiffs' constitutional

---

[1] Unless otherwise indicated, docket citations are to the docket in the lead case, *IRAP v. Trump*, 8:17-cv-00361-TDC.

claims, has concluded that "the Supreme Court's merits analysis of the Proclamation . . . does not necessarily preclude a different determination at a later stage of the case."  Mem. Op. at 40. Defendants respectfully submit that this Court's opinion cannot be reconciled with the Supreme Court's controlling opinion in *Hawaii*, and in particular, that opinion's application of the *Mandel* and rational basis standards of review.  But the Court need not agree with Defendants' view because, at the very least, the Court's identification and treatment of questions it believed were left open by the Supreme Court raises serious questions of law over which there is substantial ground for disagreement.  Such questions are precisely those for which interlocutory certification pursuant to 28 U.S.C. § 1292(b) is intended.

Because the standard for certification is satisfied and an interlocutory appeal will materially advance the termination of this litigation, this Court should certify its opinion for interlocutory appeal pursuant to § 1292(b).  In addition, Defendants respectfully request that the Court stay any discovery pending resolution of all proceedings related to that interlocutory appeal.  This Court previously granted Defendants' motion to stay discovery pending the Supreme Court's decision in *Hawaii*, and the same reasoning justifies a stay of discovery in the present posture.  Allowing intrusive and burdensome discovery to proceed prior to resolution of interlocutory proceedings that may well end this litigation would threaten to waste both the parties' and this Court's resources.  Accordingly, this Court should grant § 1292(b) certification for its Memorandum Opinion and stay any and all discovery proceedings pending completion of those § 1292(b) proceedings.

At the very least, if the Court denies the Government's motion to stay discovery (as the Court recently suggested it was inclined to do during the telephonic case management conference), Defendants respectfully submit that there is no plausible basis for denying § 1292(b) certification

of the Court's May 2 Order.  Plaintiffs would obviously not be prejudiced by any interlocutory appeal if they are allowed to conduct discovery (over the Government's objection) while that appeal is ongoing.  And although the Government strenuously urges the Court to also stay discovery, granting certification now would at least allow the Government to seek appellate consideration of the important and potentially dispositive legal issues addressed by this Court's opinion at the earliest possible stage of the litigation.

Thus, the Court should certify its May 2 Order for interlocutory appeal and should also simultaneously stay discovery pending completion of those appeal proceedings.  To the extent the Court rejects the Government's request for a stay of discovery, however, there is plainly no basis for denying § 1292(b) certification, and at a minimum the Court should grant that request.

## BACKGROUND

After this Court and a district court in Hawaii entered, and the Fourth Circuit and Ninth Circuit affirmed, worldwide injunctions prohibiting enforcement of the Proclamation's entry suspensions except with regard to nationals of North Korea and Venezuela and aliens lacking a bona fide relationship with a person or entity in the United States, the Supreme Court granted review of the Courts of Appeals' decisions.  *See Hawaii*, 138 S. Ct. at 2404; *IRAP v. Trump*, 857 F.3d 554 (4th Cir. 2017); *Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017).  Reversing the Ninth Circuit's decision, the Supreme Court found numerous features of the Proclamation to be dispositive such that the Proclamation satisfied not only the deferential *Mandel* standard of review, but also rational basis review.  *See Hawaii*, 138 S. Ct. at 2417-22.  With respect to the Fourth Circuit's decision affirming this Court's injunction, the Supreme Court vacated the Fourth Circuit's judgment and remanded the case back to the Fourth Circuit, *see IRAP v. Trump*, 138 S. Ct. 2710 (2018), after which the Court of Appeals remanded to this Court.  *See* 905 F.3d 287 (4th Cir. 2018).

Following the remand, the Plaintiffs in all three cases stated their desire to continue litigating their challenges to the Proclamation. The *IAAB* Plaintiffs and *Zakzok* Plaintiffs each filed amended complaints, and the Government moved to dismiss the complaints in all three cases. *See* Def's Combined Mem. in Support of Mot. to Dismiss, ECF No. 265-1 (Nov. 7, 2018) ("MTD"). As to Plaintiffs' constitutional claims, the Government argued (among other things) that *Hawaii* is binding, and that Plaintiffs' constitutional claims are accordingly foreclosed. *See id.* at 20-28.

On May 2, 2019, this Court denied the Government's motions to dismiss as to Plaintiffs' constitutional claims. *See* Mem. Op. at 27-46. In particular, this Court rejected the Government's arguments that the Supreme Court had already determined that public pronouncements by the President did not support invalidating the Proclamation based on alleged religious animus. *Id.* at 34-35. This Court acknowledged that the Supreme Court held that the Proclamation was rationally related to its stated purposes "after consideration of many of the same facts asserted in the Complaints," *id.* at 38, but concluded that Plaintiffs are nonetheless entitled to continue with their claims "under the highly deferential Rule 12(b)(6) standard," *id.* at 39. This Court also rejected the Government's alternative arguments, suggesting that Plaintiffs may have a cognizable liberty interest under the Due Process Clause by articulating an interest that "has been considered but not foreclosed by the Supreme Court," *id.* at 43, and that Plaintiffs needed only to establish that "the Proclamation could be found to have injured" them to "state[] a plausible claim" under the Establishment Clause. *Id.* at 45.

Separately, the Court dismissed Plaintiffs' claims under the Administrative Procedure Act ("APA") without prejudice, holding that Plaintiffs had failed to identify a final agency action subject to review under that Act. *See* Mem. Op. at 26-27. The Court provided Plaintiffs with an opportunity to determine whether to amend their Complaints to attempt to identify a final agency

action subject to such challenge. *See* ECF No. 277. On May 7, 2019, Plaintiffs provided notice to the Court that they did not wish to amend their Complaints, and instead requested that the Court order Defendants to respond to the existing Amended Complaints within 14 days of Plaintiffs' notice, and to enter an expedited discovery schedule. *See, e.g.*, ECF No. 278. On May 20, 2019, the Court ordered Defendants to answer the Amended Complaints on or before May 31, 2019, *see* ECF No. 280, which the Government has since done. *See IRAP*, ECF No. 283; *IAAB*, ECF No. 96; *Zakzok*, ECF No. 75.

## ARGUMENT

## I.   THE COURT SHOULD CERTIFY ITS ORDER DENYING THE MOTION TO DISMISS FOR INTERLOCUTORY APPEAL.

The Court should certify its Memorandum & Order for interlocutory appeal because: (1) it involves "controlling question[s] of law"; (2) there is a "substantial ground for difference of opinion" on those questions; and (3) an immediate appeal will "materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). While the Fourth Circuit has cautioned that § 1292(b) should be strictly construed and sparingly used, *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017), the Supreme Court has explained that "district courts should not hesitate to certify an interlocutory appeal" when a decision "involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009); *compare Klinghoffer v. S.N.C. Achille Lauro Ed Altri-gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) (possibility of subjecting PLO to tort claims constituted "exceptional circumstances" warranting § 1292(b) review); *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 55 (D.D.C. 2009) ("novelty of the issues" involved in application of recent Supreme Court opinion to detainee habeas petitions established "extraordinary circumstances" justifying 1292(b) certification).

Further, in determining whether to grant §1292(b) certification, the court should weigh "[t]he difficulty and general importance of the question presented" and "the significance of the gains from reversal," 16 Charles Alan Wright et al., Federal Practice and Procedure § 3930 (3d ed. 2008), both of which weigh heavily in favor of granting certification here.  The Supreme Court's decision in *In re United States*, 138 S. Ct. 443 (2017), demonstrates the propriety of interlocutory certification of these types of questions.  There, in another case concerning Executive Branch actions in the area of immigration policy, the specific district court order at issue required production of an expansively construed "administrative record" that would have included sensitive Executive Branch materials.  The Supreme Court vacated the Ninth Circuit's denial of the Government's request for mandamus, holding that the district court should have first resolved whether to dismiss Plaintiffs' claims because those arguments, if accepted, likely would eliminate the need for litigation over discovery and the scope of the administrative record.  *Id*. at 445.  Moreover, the Supreme Court urged the district court to consider whether, once entered, its ruling on these dispositive issues should be certified for interlocutory appeal under § 1292(b).  *Id*.

The Supreme Court's guidance is unambiguous: in cases of significant constitutional import or extraordinary national significance, a district court should utilize the § 1292(b) mechanism, if appropriate, to avoid significant litigation burdens on litigants.  *See also In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) (granting permission for interlocutory appeal where plaintiffs had sued the President in his personal capacity on a novel state law claim and had served discovery on him, because "[t]he practical and political consequences of such a case are readily apparent"); *Fernandez-Roque v. Smith*, 671 F.2d 426, 431 (11th Cir. 1982) (in case presenting "novel controversies" involving the rights of illegal aliens and "the scope of the constitutional powers of Congress and the President to conduct foreign affairs," court of appeals issued writ of

mandamus requiring district court to certify threshold ruling for interlocutory appeal because it presented a "controlling [question] of national significance").

The Court's May 2, 2019 Order meets both the explicit standards for certification under § 1292(b) and the general rule that such certification should focus on decisions of "new legal question[s]" or matters of "special consequence." *Mohawk*, 558 U.S. at 111. This Court issued an Order involving the direct application of new, on-point Supreme Court authority to a "fundamental act of sovereignty" carried out by the President himself. Interlocutory review is not only appropriate, but undeniably warranted.[2]

### A.    This Court's Order Turns On Controlling Questions of Law.

A question of law is "controlling" if its "resolution would be completely dispositive of the litigation, either as a legal or practical matter." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015). The Fourth Circuit has identified as "proper" for certification and interlocutory review "an order presenting a 'pure question of law,' *i.e.*, 'an abstract legal issue that the court of appeals can decide quickly and cleanly.'" *Agape Senior Cmty.*, 848 F.3d at 340 (quoting *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016). Here, the Court's May 2, 2019 Order involves numerous controlling issues of law, each of which "could advance the litigation by ending it." *Coal. For Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*, Civil No. CCB-06-2773, 2015 WL 4040425, at *7 (D. Md. June 29, 2015).

1.      First, it is a "pure question of law" whether the Proclamation should be evaluated

---

[2] Though the requirements for § 1292(b) certification have been met for *all* the legal issues identified in this brief, so long as this Court identifies *any* issue that satisfies the § 1292(b) requirements, "the appellate court may address any issue fairly included within the certified order." *Yamaha Motor Corp., USA, v. Calhoun*, 516 U.S. 199, 205 (1996). This is because "it is the *order* that is appealable, and not the controlling question identified by the district court." *Id.* (quoting 9 J. Moore & B. Ward, Moore's Federal Practice ¶ 110.25[1], p. 300 (2d ed.1995)); *see also Smith v. Murphy*, 634 F. App'x 914, 915 (4th Cir. 2015) (quoting *Calhoun*).

solely under the highly deferential *Mandel* standard of review—under which all of the parties and the Court appear to accept that *Hawaii* is controlling and would require dismissal of this lawsuit— or whether rational basis review is appropriate. *Compare* Mem. Op. at 30-31 (stating intent to apply "the *Mandel* standard and rational basis review to the Proclamation"), *with Hawaii*, 138 S. Ct. at 2420 (noting that "[a] conventional application of *Mandel*, asking only whether the policy is facially legitimate and bona fide, would put an end to our review," but, in light of Government invitation, "[f]or our purposes today, we *assume* that we may . . . apply[] rational basis review" (emphasis added)). Resolving this question in the Government's favor through a pure application of *Mandel* would thus "advance the litigation by ending it" as to all claims.

2.    More fundamentally, there is also the controlling question of whether, by determining that the Proclamation satisfies rational basis review, the Supreme Court has conclusively held that Plaintiffs' claims fail as a matter of law. *See Hawaii*, 138 S. Ct. at 2420-21 (stating that "[i]t cannot be said that it is impossible to 'discern a relationship to legitimate state interests' or that the policy is 'inexplicable by anything but animus'"). Although Plaintiffs raise a variety of constitutional challenges to the Proclamation, this Court's opinion acknowledges that the same standard applies to *all* of Plaintiffs' constitutional claims. *See* Mem. Op. at 30. Thus, resolving the "pure question of law" whether the Supreme Court has already determined that the Proclamation adequately satisfies both *Mandel* and rational basis review would automatically "advance the litigation by ending it" as to all claims.

3.    Similarly, even if rational basis review is permitted, and even if it were theoretically possible for a *hypothetical complaint* to adequately plead a claim against the Proclamation notwithstanding the Supreme Court's decision, there is still the question whether *these Plaintiffs' complaints* adequately plead that the Proclamation fails the rational basis test. In *Hawaii*, the

Supreme Court examined virtually all of the same allegations that continue to be raised by Plaintiffs here.  For example, the Supreme Court considered the President's past statements, *see* 138 S. Ct. at 2417-18; the application of the baseline criteria for selecting nations on which to impose entry restrictions and the two deviations from the results of the baseline, *see id.* at 2421; and allegations that the waiver process set forth in the Proclamation is not functioning properly, *see id.* at 2422-23 & n.7.  Notwithstanding the Supreme Court's consideration of those same allegations, the Court nonetheless concluded that "[t]he Proclamation does not fit [the] pattern" of past Government actions found to be "inexplicable by anything but animus."  *Id.* at 2417-18, 2420 (citation omitted).  Plaintiffs' amended complaints do not present anything meaningfully different from what the Supreme Court already considered, and indeed, the *IRAP* Plaintiffs did not even bother to amend their complaint following the Supreme Court's decision.  In this context, the question whether Plaintiffs' complaints adequately plead a claim in light of the Supreme Court decision presents a controlling question that is appropriate for interlocutory review.  As the Supreme Court has explained in another context, "[e]valuating the sufficiency of a complaint is *not* a '[f]act-based' question of law" but an "'abstract' *legal question*[]."  *Ashcroft v. Iqbal,* 556 U.S. 662, 674–75 (2009) (emphases added).

4.      Finally, the Court's rejection of the Government's other grounds for dismissal also present "completely dispositive" questions of law that can be determined as "abstract legal question[s]" and therefore warrant interlocutory review.  The existence of a cognizable liberty or property interest for Plaintiffs in the issuance of a visa to foreign national family members does not turn on any factual question, but rather on a question of law that this Court's opinion acknowledges was rejected by the plurality opinion in *Kerry v. Din*, 135 S. Ct. 2128, 2138 (2015).  This Court's opinion likewise rejected the Government's alternative theory for dismissal of

Plaintiffs' Establishment Clause and Equal Protection Clause claims on purely legal grounds, rejecting the legal authority that demonstrates that individuals who are indirectly injured by alleged religious discrimination against others have not suffered violations of their own constitutional rights. *See* Mem. Op. at 44-45; *compare* MTD at 26-28. These are all controlling legal questions which could advance this litigation by ending it.

## B.   There Is Substantial Ground for Difference of Opinion as to the Controlling Questions of Law Identified in This Motion.

Also satisfied is § 1292(b)'s requirement that a substantial ground for difference of opinion exists as to each of the controlling legal questions identified here. The Court's opinion presents a novel application of the Supreme Court's opinion in *Hawaii*, and courts have repeatedly recognized that such "novel legal issues" "on which fair-minded jurists might reach contradictory conclusions" "may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also In re Trump*, 874 F.3d at 952; *Goodman v. Archbishop Curley High Sch., Inc.*, 195 F. Supp. 3d 767, 774 (D. Md. 2016) ("when a matter of first impression also had other grounds for difference of opinion, . . . district courts in this circuit have certified the issue for interlocutory appeal") (citation omitted); *Lynn v. Monarch Recovery Mgmt., Inc.,* 953 F. Supp. 2d 612, 624 (D. Md. 2013). Indeed, at least one district court has previously reached the opposite conclusion as this Court's opinion—*i.e.*, that constitutional claims seeking to challenge the Proclamation are foreclosed by the Supreme Court's decision in *Hawaii*, and thus those claims should be dismissed pursuant to Rule 12(b)(6). *See Alharbi v. Miller*, 368 F. Supp. 3d 527, 565 (E.D.N.Y. 2019) (dismissing an Establishment Clause claim against the Proclamation because it "is foreclosed by the Supreme Court's decision in *Trump v. Hawaii*"), *appeal filed*, No. 19-1570 (2d Cir. May 28, 2019); *see also Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1022-23 (N.D. Cal. 2019) (discussing the

"sizeable roadblock" to an equal protection claim against the Proclamation, namely that "[t]he Supreme Court has already concluded in reviewing the Proclamation that 'the Government has set forth a sufficient national security justification to survive rational basis review'" (quoting *Hawaii*, 138 S. Ct. at 2423)). These decisions by themselves confirm that fair-minded jurists might reach contradictory conclusions on these issues.

Moreover, "'[t]he level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case.'" *Coal. For Equity & Excellence*, 2015 WL 4040425, at *6 (quoting 16 Fed. Prac. & Proc. Juris. § 3930).[3] Here, the importance of the issues cannot be seriously questioned. This is a challenge to action by the President himself regarding "the admission and exclusion of foreign nationals[:] a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Hawaii*, 138 S. Ct. at 2418 (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). Its resolution would involve a "[j]udicial inquiry into the national-security realm rais[ing] concerns for the separation of powers," and in which "the lack of competence on the part of the courts is marked." *Id.* at 2419 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1861 (2017) and *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010)). And the challenge further involves the unusual circumstance where the Supreme Court has already determined that the precise Presidential action at issue "is expressly premised on legitimate purposes," "is well within executive authority and could have been taken by any other President,"

---

[3] *See also Coal. For Equity & Excellence*, 2015 WL 4040425, at *6 (granting § 1292(b) certification in light of the "context of this extraordinarily important case," even though the court was "confident in the correctness" of its ruling); *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 55 (D.D.C. 2009) (alien detainees in an active war zone overseas sought to invoke the Suspension Clause by petitioning for writ of habeas corpus; granting § 1292(b) certification given "the novelty of the issues" about which "courts could reasonably differ").

and "has set forth a sufficient national security justification to survive rational basis review." *Hawaii*, 138 S. Ct. at 2421-23.  These striking facts underscore the need for § 1292(b) certification. Indeed, certification is all the more warranted for purposes of avoiding the contentious, burdensome, and intrusive discovery process that will almost certainly follow if § 1292(b) certification is denied.  *See* Part II, *infra*.  Thus, on each of the controlling questions identified above, there is substantial ground for disagreement, especially once the importance of this case and its procedural posture are considered.

### 1.       *Mandel* Is the Appropriate Standard, Not Rational Basis Review

In *Hawaii*, the Supreme Court reiterated that the Judicial Branch only "engage[s] in a circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen" and that this review is "limited . . . to whether the Executive gave a 'facially legitimate and bona fide' reason for its action."  *Hawaii*, 138 S. Ct. at 2419 (quoting *Mandel*, 408 U.S. at 769).  *Hawaii*'s discussion of the *Mandel* standard paid special care to the context in which *Mandel* arose and has been applied.  *See id.*  For example, the *Mandel* standard was also applied in *Fiallo v. Bell*, 430 U.S. 787 (1977), in the context of "a 'categorical' entry classification that discriminated on the basis of sex and legitimacy" *explicitly* and *on its face*; yet the Court in *Hawaii* nevertheless emphasized that in such cases "'it is not the judicial role . . . to probe and test the justifications' of immigration policies."  *Hawaii*, 138 S. Ct. at 2419 (quoting *Mandel*, 430 U.S. at 799).  The Supreme Court thus made clear that this standard of review governs "any constitutional claim concerning the entry of foreign nationals," *id.* at 2420 n.5, because "*Mandel*'s narrow standard of review 'has particular force' in admission and immigration cases that overlap with 'the area of national security.'"  *Id.* at 2419 (quoting *Din*, 135 S. Ct. at 2140 (Kennedy, J., concurring in judgment)).

To be sure, in *Hawaii*, the Government argued in the alternative that the Proclamation

satisfies not only the "conventional application of *Mandel*," but also rational basis review even if the Supreme Court had held that *Mandel* did not apply.  138 S. Ct. at 2420.  But the Court explicitly declined to hold that rational basis review was the appropriate standard and merely assumed as much:  "We need not define the precise contours of that inquiry in this case. . . .  For our purposes today, we *assume* that we may look behind the face of the Proclamation to the extent of applying rational basis review."  *Hawaii*, 138 S. Ct. at 2420 (emphasis added).

This Court's opinion, however, treats *Hawaii* as requiring district courts to undertake the "rational basis" inquiry rather than limiting their review to the *Mandel* inquiry alone.  Mem. Op. at 27-28.  The Court reached that conclusion by treating the Supreme Court's statement that the "legitimate and bona fide" test of *Mandel* had been met as limited only to the "facially legitimate" prong, and characterizing the Supreme Court's further analysis as a requirement "for the 'bona fide' prong."  Mem. Op. at 28.

Fair-minded jurists could disagree with this interpretation of *Hawaii*.  The Supreme Court expressly stated that *Mandel* provides the appropriate standard for "any constitutional claim concerning the entry of foreign nationals," *Hawaii*, 138 S. Ct. at 2420 n.5, and made no explicit division in its analysis between the "facially legitimate" and "bona fide" prongs.  Indeed, the Supreme Court's analysis made clear that, under *Mandel*, the Proclamation satisfied *both* prongs: "A conventional application of *Mandel*, asking only whether the policy is facially legitimate *and bona fide*, would put an end to our review."  *Hawaii*, 138 S. Ct. at 2420 (emphasis added).  Accordingly, a fair-minded jurist could conclude that *Mandel* is the applicable standard of review, and that the Supreme Court dispositively concluded that the Proclamation satisfies *Mandel*.

      **2.     The Supreme Court Has Conclusively Held that the Proclamation Satisfies the Rational Basis Test**

Even if rational basis review applied, *Hawaii* controls the outcome and there are substantial

grounds for disagreeing with this Court's contrary conclusion.  In *Hawaii*, the Supreme Court described the question as whether the policy "can reasonably be understood to result from a justification independent of unconstitutional grounds," and then concluded that "[t]he Proclamation does not fit th[e] pattern" of policies where it "is impossible to discern a relationship to legitimate state interests or . . . is inexplicable by anything but animus."  138 S. Ct. at 2420-21. In reaching that conclusion, the Supreme Court specifically distinguished the Proclamation from the three cases that this Court relied on in its opinion for explaining the scope of rational basis review.  *Compare* Mem. Op. at 32-33 (discussing the circumstances under which "the Proclamation would fail rational basis review" based on *Cleburne*, *Moreno*, and *Romer*), *with Hawaii*, 138 S. Ct. at 2420 (expressly distinguishing the Proclamation from *Cleburne*, *Moreno*, and *Romer*).

True, the Supreme Court's decision formally addressed only the preliminary-injunction standard because that was the judgment before the Court at that time.  *See Hawaii*, 138 S. Ct. at 2406-07.  But a fair-minded jurist could conclude that the reasoning of the decision in *Hawaii* equally forecloses Plaintiffs' claims in this context.  Nothing about the Supreme Court's legal reasoning was tentative.  And even under rational basis review, a claim should be dismissed upon a Rule 12(b)(6) motion "if 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Applegate, LP v. City of Frederick, Md.*, 179 F. Supp. 3d 522, 532 (D. Md. 2016) (quoting *Armour v. City of Indianapolis*, 566 U.S. 681 (2012)) (cleaned up).  Here, a rational basis for the Proclamation is far more than "reasonably conceivable"—it has already been located by the Supreme Court, which identified "persuasive evidence that the entry suspension has a legitimate grounding in national security concerns."  *Hawaii*, 138 S. Ct. at 2421.

Moreover, the type of inquiry envisioned by this Court's opinion—in which Plaintiffs are

-14-

entitled to build a record and try to "present[] evidence that not only undermines, but specifically refutes, the Government's contention that the Proclamation is rationally related to the stated legitimate national security purposes," Mem. Op. at 41—is exactly the type of inquiry that the Supreme Court held to be foreclosed in *Hawaii*. *See* 138 S. Ct. at 2421 (the Judicial Branch "cannot substitute [its] own assessment for the Executive's predictive judgments" regarding national security interests). Indeed, this Court's opinion appears to contemplate an inquiry at least as extensive as what the *Hawaii* dissenters undertook. *See id.* at 2441-45 (Sotomayor, J., dissenting). But the *Hawaii* majority made clear that such an inquiry was inappropriate as a matter of law: "It cannot be said that it is impossible to discern a relationship to legitimate state interests or that the policy is inexplicable by anything but animus. Indeed, the dissent can only attempt to argue otherwise by refusing to apply anything resembling rational basis review." *Id.* at 2420-21. Thus, there certainly is substantial room to disagree with this Court's conclusion that Plaintiffs may proceed to develop further evidence "to show that the Proclamation is not rationally related to the legitimate national security" interests identified by the Government. *See also Alharbi*, 368 F. Supp. 3d at 565 (dismissing Establishment Clause claim as "foreclosed by the Supreme Court's decision in *Trump v. Hawaii*").

### 3.    Plaintiffs' Complaints Do Not Plausibly Allege a Valid Claim Against the Proclamation

Even if it were theoretically possible for a plaintiff to allege a valid claim against the Proclamation sufficient to survive a Rule 12(b)(6) motion to dismiss, a fair-minded jurist could reasonably conclude that these Plaintiffs' Complaints fail to allege such a claim. Indeed, the facts recounted in Plaintiffs' Complaints were either already considered by the Supreme Court in *Hawaii* or are legally irrelevant to a rational-basis inquiry. Thus, Plaintiffs' Complaints fail to state plausible claims even if some other hypothetical complaint might suffice.

This Court's opinion focused on three features of Plaintiffs' allegations as demonstrating the plausibility of their claims.  *See* Mem. Op. at 34-38.  But a fair-minded jurist could conclude that none of those allegations is sufficient to overcome the Supreme Court's analysis in *Hawaii*.

First, this Court focused on the President's past statements as supporting a conclusion that the Proclamation was issued based on anti-Muslim animus.  *See* Mem. Op. at 34-35.  But the Supreme Court considered those very same statements and upheld the Proclamation.  *See Hawaii*, 138 S. Ct. at 2417-18; *see also Alharbi*, 368 F. Supp. 3d at 564 (explaining that the President's statements are not sufficient under Rule 12(b)(6) to "give rise to an inference of purposeful discrimination").  Moreover, as this Court has acknowledged, the President's subjective intent in issuing the Proclamation is legally irrelevant because "the presence of an impermissible purpose is not sufficient to invalidate a classification on rational basis review[.]"  Mem. Op. at 36.

Second, this Court discussed allegations "aimed at refuting 'the presumption of rationality' that applies to the Proclamation's stated national security purposes."  Mem. Op. at 36.  The Court discussed the baseline review of countries' information-sharing practices and then noted potential "uneven application of purportedly neutral criteria."  *See id.*  But those same "uneven applications" were before the Supreme Court in *Hawaii*, and the Court rejected the contention that they undermined the rationality of the Proclamation.  *See* 138 S. Ct. at 2421 ("Plaintiffs seek to discredit the findings of the review, pointing to deviations from the review's baseline criteria resulting in the inclusion of Somalia and omission of Iraq.  But as the Proclamation explains, in each case the determinations were justified by the distinct conditions in each country.").  Moreover, this Court's speculation that, even beyond Iraq, there may have been countries deemed "inadequate" under the baseline criteria but for which no entry restrictions were imposed, *see* Mem. Op. at 36, is not supported by any plausible allegations in any of the Plaintiffs' Complaints, and is in fact

affirmatively contradicted by the Proclamation itself.[4]

Third, this Court discussed allegations "that the waiver process has not been applied in a manner consistent with the stated national security purposes of the Proclamation." Mem. Op. at 37. But the Supreme Court considered the exact same allegations, and yet upheld the Proclamation in the face of them. *Compare Hawaii*, 138 S. Ct. at 2431 (Breyer, J., dissenting) (discussing how the Proclamation instructs agencies to issue guidance on waivers but "to my knowledge, no guidance has issued" and how "[a]n examination of publicly available statistics [regarding waivers] also provides cause for concern"), *and id.* at 2445 (Sotomayor, J., dissenting) ("[T]here is reason to suspect that the Proclamation's waiver program is nothing more than a sham."), *with id.* at 2422-23 & n.7 (majority op.) (discussing how the waiver system *supports* the Proclamation's legality, and how "even if such an inquiry [into the waiver program] were appropriate under rational basis review, the evidence [the dissent] cites . . . does not affect our analysis"). Particularly in light of the Supreme Court's opinion, a fair-minded jurist could reasonably conclude that evidence regarding the waiver system's implementation is irrelevant to evaluating the Proclamation under rational basis review.[5]

---

[4] The Proclamation explains that sixteen countries were *initially* identified as "inadequate" as part of DHS's *first* worldwide review. *See* Procl. § 1(e). But the period of diplomatic engagement then "yielded significant improvements in many countries," *id.* § 1(f), after which only seven countries (plus Iraq) "continue[d] to have 'inadequate' identity-management protocols, information-sharing practices, and risk factors, with respect to the baseline[.]" *Id.* § 1(g). More recently, Chad's entry restrictions were removed because it "made improvements and now sufficiently meets the baseline[.]" Pres. Procl. No. 9723, 83 Fed. Reg. at 15,939. Contrary to the Court's opinion, then, the Proclamation makes clear that there are no countries (other than Iraq) that were deemed "inadequate" under the baseline but did not receive any entry restrictions.

[5] A fair-minded jurist could also conclude that Plaintiffs' allegations regarding the waiver system's implementation do not plausibly support their claim, given that their allegations are contrary to the record and other publicly available information. As discussed in the Government's motion to dismiss, the *Zakzok* complaint itself confirms that waivers are being granted, and

-17-

Finally, even if this Court were correct that Plaintiffs' allegations were sufficient to overcome the national-security rationale of the Proclamation, a reasonable jurist could conclude that the Proclamation must still be upheld under rational basis review based on the Proclamation's independent foreign affairs rationale.  As explained at the hearing on the Government's motion to dismiss, the foreign-affairs rationale is separate and distinct from national security, *see* MTD Hr'g Tr. at 102-03, and under rational basis review a policy must be upheld if "there is *any* reasonably conceivable state of facts that could provide a rational basis for the classification."  *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993) (emphasis added).

Here, both the Proclamation itself and the Supreme Court's decision demonstrate that the Proclamation can be understood to advance rationally the President's foreign affairs agenda by placing diplomatic pressure on foreign governments to share more information needed by the United States to vet foreign travelers.  *See, e.g.*, Procl. § 1(h)(i) (explaining how the President sought to "craft[] those country-specific restrictions that would be most likely to encourage cooperation given each country's distinct circumstances," and how, even apart from preventing entry of certain foreign nationals who may be dangerous, the entry restrictions "are also needed to elicit improved identity-management and information-sharing protocols and practices from foreign governments"); *Hawaii*, 138 S. Ct. at 2411, 2422 (discussing how "[o]ne of the key objectives of the Proclamation is to encourage foreign governments to improve their practices," and how several countries have in fact improved their practices since the Proclamation was issued);

---

publicly available State Department statistics reflect that thousands of visas have been issued with waivers.  *See* MTD at 7 n.2.  Moreover, the State Department has issued extensive guidance about the waiver process, *see generally Emami v. McAleenan*, No. 3:18-cv-1587 (N.D. Cal.), ECF No. 98-1 at AR-001 to AR-345 (Administrative Record containing internal guidance regarding waivers), and has also released even more detailed, updated statistics regarding waiver issuance, *see* Department of State Report: Implementation of Presidential Proclamation 9645, *available at* http://tinyurl.com/y52ek34p.

*see also* Pres. Procl. No. 9723, 83 Fed. Reg. at 15,937-15,938 (discussing how the Proclamation "directed the Secretary of State to engage with countries subject to these entry restrictions in order to improve their performance against the baseline criteria," and how after 180 days, "while more work must be done, identity-management and information-sharing practices are improving globally"). Neither this Court's Opinion nor Plaintiffs' Complaints provide any basis for doubting this legitimate purpose of the Proclamation, *see Hawaii*, 138 S. Ct. at 2421, which would independently require upholding the Proclamation under rational basis review. Indeed, in addition to improvements during the diplomatic engagement period, *see* Procl. § 1(e)-(f), the Proclamation itself has already made progress toward its objective: visa restrictions on Chad, one of the countries originally covered by the Proclamation, were lifted after the government of Chad improved its information-sharing practices. *See* Pres. Procl. No. 9723, 83 Fed. Reg. 15,938-15,939 (discussing how "Chad has made marked improvements in its identity-management and information-sharing practices" sufficient to meet the baseline, and therefore "terminating the entry restrictions and limitations previously placed on the nationals of Chad"). Thus, a fair-minded jurist could hold that Plaintiffs' constitutional claims must be dismissed on the basis of this purpose as well.

### 4. Plaintiffs Cannot State Due Process and Establishment Clause Claims Based on the Denial of Entry to Others.

Finally, there are substantial grounds for disagreement with this Court's rejection of the Government's alternative bases for dismissal of Plaintiffs' constitutional claims. To assert their due process claims, Plaintiffs must establish that they have been deprived of a liberty or property interest. Both the Supreme Court's opinion in *Fiallo* and the plurality opinion in *Din* state that there is no such cognizable liberty or property interest in an individual having foreign nationals, even family members, being issued a visa (or being admitted into this country). *See Fiallo*, 430

U.S. at 795 n.6 (declining to recognize that "families of putative immigrants . . . have an interest in their admission"); *Din*, 135 S. Ct. at 2135 (the "practice of regulating spousal immigration precludes Din's claim that the denial of [a spouse's] visa application has deprived her of a fundamental liberty interest"); *see also Alharbi*, 368 F. Supp. 3d at 565 (holding that no liberty interest exists "when an alien relative is denied a visa to enter the United States" and therefore dismissing procedural due process claim against the Proclamation); *Emami*, 365 F. Supp. 3d at 1022 (dismissing procedural due process claim for lack of a valid liberty interest). Although it is Plaintiffs' burden to *show* that such a cognizable liberty interest exists, this Court noted that, in *Din*, "Justice Kennedy and Justice Alito assumed without deciding" the existence of such an interest. Mem. Op. at 42. The fact that a majority of Supreme Court Justices did not conclude that such a liberty interest exists—and the three Justices in the plurality opinion explicitly held that such an interest does *not* exist—demonstrates conclusively that "there is a significant ground for difference of opinion" as to this question.

The same is true for the Court's holding that Plaintiffs may proceed with Establishment Clause and equal protection claims premised on the rights of others. "An alien who seeks admission to this country may not do so under any claim of right" as to himself. *U.S. ex rel Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950); *see also Hawaii*, 138 S. Ct. at 2419 (noting that "foreign nationals seeking admission have no constitutional right to entry"). This principle typically precludes review of constitutional claims regarding the exclusion of aliens abroad. Under *Mandel*, courts may engage in limited judicial review of such exclusions, but only in circumstances where a U.S. citizen alleges that the exclusion violates the citizen's own constitutional rights. *See Hawaii*, 138 S. Ct. at 2419 ("[T]his Court has engaged in a circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights *of a U.S. citizen*." (emphasis added)).

Rather than resolve this as a merits question, this Court's opinion asserts that the existence of standing for such claims is sufficient to ensure that the claims advance to the merits stage. *See* Mem. Op. at 45-46 ("[T]his Court has already concluded that the Proclamation could be found to have injured Plaintiffs . . . and the Supreme Court largely validated that conclusion, [so] the Court finds that such Plaintiffs have stated a plausible claim"). But in *Hawaii*, the Court stated that this presents a "merits" question regarding the "scope of plaintiffs' Establishment Clause rights," not a question of standing. *Hawaii*, 138 S. Ct. at 2416; *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). Given this holding—as well as the fact that the Supreme Court has never upheld an Establishment Clause or equal protection claim premised on the right of an alien seeking admission to the country—fair-minded jurists could disagree with this Court's decision not to dismiss these claims. Indeed, Plaintiffs cannot plausibly demonstrate a violation of their own rights given that Plaintiffs themselves are not subject to the Proclamation and their own religion, national origin, and race are wholly irrelevant to the Proclamation's operation. At a minimum, there is substantial ground for difference of opinion sufficient to warrant interlocutory appeal under § 1292(b).

## II.   THE COURT SHOULD STAY DISCOVERY PENDING COMPLETION OF ALL § 1292(B) PROCEEDINGS.

The Government also respectfully requests that discovery in these cases be stayed pending completion of proceedings related to any interlocutory appeal. Given the controlling nature of the legal issues discussed above—and the distinct possibility that the Fourth Circuit's consideration of them will terminate this litigation entirely—allowing discovery to proceed in the interim would threaten significant waste of the parties' (and the Court's) time and resources, particularly if the Fourth Circuit later issues a ruling that narrows or ends this case.

As this Court noted when granting the Government's motion to stay proceedings pending

Supreme Court review, "judicial economy will be served by a stay of this case because the resolution of the issues before the Supreme Court will likely have a direct impact on the future course of the case, including on the next decisions this Court must make."  Mem. Op. Granting Mot. to Stay (ECF No. 255) at 9 [hereafter "Stay Op."].  The same logic is equally applicable here: assuming that interlocutory appeal is permitted, judicial economy would plainly be served by awaiting the Fourth Circuit's resolution of the controlling questions of law identified above.  The Fourth Circuit's decision on those issues may, as the Government believes, terminate this litigation entirely.  Even if the Fourth Circuit's decision does not terminate this litigation entirely, however, at a minimum it will provide significant guidance about the appropriate standard of review (*Mandel* or rational basis review), as well as the reasons why Plaintiffs' claims are plausible in light of that standard of review.  Even if the Fourth Circuit does not terminate this litigation, therefore, its decision will still provide important guidance about what information is relevant to Plaintiffs' remaining claims, and thus what the appropriate scope of discovery (if any) should be for those claims.  On the other hand, if this Court declines to stay discovery and requires the parties to move forward based on a provisional legal framework, that still would not expedite final resolution of this case because all of the Court's discovery rulings "would be subject to revisitation and potential modification" once the Fourth Circuit issues its ruling.  Stay Op. at 10; *cf. id.* at 13 ("[A] court's ruling on a motion to dismiss may assist in defining the contours of discovery.").

Here, the perils of proceeding with discovery are particularly striking given the extraordinary breadth of the discovery that Plaintiffs have signaled an intent to seek.  In connection with the *IRAP* Plaintiffs' claims against EO-2, for example, they sought expansive discovery on a variety of topics.  They submitted four document requests, two of which sought "[a]ll memoranda, policies, projections, reports, data, summaries, or similar documents relating to the development

of the January 27 Order," as well as "relating to the development of any replacement for the

January 27 Order." *IRAP*, ECF No. 63-1 at 7 (Requests for Production of Documents Nos. 1 and

3). The *IAAB* and *Zakzok* Plaintiffs, for their part, have similarly suggested an intent to seek

discovery that would be significantly burdensome and require the Court to confront numerous

sensitive issues—and that is only the discovery that they are "willing to begin with." *Zakzok*, ECF

No. 53 at 23. Indeed, at the recent hearing on Defendants' motion to dismiss, Plaintiffs' counsel

resisted placing any meaningful limits on the discovery they would seek, even suggesting that

Plaintiffs might attempt to pierce the presidential communications privilege. *See* MTD Hr'g Tr.

at 88-91. As the Government has previously explained, the broad discovery Plaintiffs are likely

to pursue would be extraordinarily burdensome, would likely generate numerous privilege

disputes, and would place this Court on a collision course with the presidential communications

privilege and/or the President's more general Executive Privilege. *See Zakzok*, ECF No. 51-1 at

14-21.

    Under these circumstances, it is virtually certain that any discovery will require significant

motions practice—before this Court and potentially before the Fourth Circuit. Plaintiffs have in

the past not shied away from this prospect. *See Zakzok*, ECF No. 53 at 15 ("Plaintiffs do not deny

that there may be disputes about discovery requiring the time and attention of the parties."); *id.* at

14 (noting that "this process could be lengthy and involve complicated issues"); *id.* at 27 (arguing

that this Court should "resolve any questions of privilege while appellate proceedings on the

preliminary injunction are pending"). But Plaintiffs' eagerness to litigate privilege disputes with

respect to documents that are plainly covered by the presidential communications privilege is the

exact *opposite* of how the Supreme Court has instructed courts to proceed. *See Cheney v. United*

*States District Court*, 542 U.S. 367, 385 (2004) ("[T]he high respect that is owed to the office of

the Chief Executive[] is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery, and [ ] the Executive's constitutional responsibilities and status are factors counseling judicial deference and restraint in the conduct of litigation against it.").

By far the most prudent course is for this Court to stay discovery pending interlocutory review—which, depending on the Fourth Circuit's resolution of the important legal issues discussed above, could end this litigation entirely or at least provide important guidance about how discovery should proceed (if at all). *See* Stay Op. at 12 ("[W]here the Supreme Court may shortly provide definitive guidance on key legal questions that could impact the viability of some or all of the claims asserted by Plaintiffs, considerations of judicial economy strongly counsel in favor of a stay."); *id.* at 13 ("Until the legal landscape is charted by the Supreme Court, discovery will be a fraught enterprise, steeply taxing both the parties and this Court.").  Although the Court's prior opinion was issued in the context of a stay pending Supreme Court review, the analysis is the same regardless of which appellate court will issue the potentially dispositive legal guidance—*i.e.*, regardless of whether the guidance comes from the Fourth Circuit or the Supreme Court.

Finally, Plaintiffs would not suffer any meaningful prejudice as a result of staying discovery pending completion of § 1292(b) proceedings.  In terms of district court proceedings, as discussed above, it is far from clear that resolution would be achieved faster by allowing discovery to proceed under the current legal framework, litigating discovery disputes under that framework, and then *re*-litigating those same disputes under the framework announced by the Fourth Circuit— as opposed to just awaiting guidance from the Fourth Circuit in the first instance.  And even if some amount of delay were to occur, the Government is willing to minimize any such potential delay by requesting expedited § 1292(b) proceedings before the Fourth Circuit.  Moreover, the requested stay here is likely to be shorter than the one previously requested (and granted) pending

Supreme Court review.  *See* Stay Op. at 13 (granting a stay that would "result[] in a total delay in the case of approximately six months").  And even if this Court is concerned about entering an indefinite stay, that is no reason to allow discovery to proceed immediately; rather, the Court could enter a shorter stay, subject to revisiting the issue at that time.  For example, it would make eminent sense to stay discovery at least for the time necessary to know whether the Fourth Circuit has accepted the § 1292(b) interlocutory appeal and to know the overall schedule associated with that appeal.

In short, staying discovery pending completion of § 1292(b) proceedings is the most sound method for promoting judicial economy and preserving the parties' resources, particularly given the near-certainty of significant discovery disputes.  The likely burdens and intrusiveness of discovery are not only an independent reason why § 1292(b) certification is warranted, *see* Part I, *supra*, but also confirm that all discovery should be stayed pending completion of those § 1292(b) proceedings.

## III.    AT THE VERY LEAST, THERE IS NO BASIS FOR DENYING CERTIFICATION IF THE COURT PERMITS PLAINTIFFS TO BEGIN DISCOVERY

During the June 18, 2019 telephonic Case Management Conference, this Court stated that, although it had not firmly decided the issue, the Court was unlikely to stay discovery pending completion of all § 1292(b) proceedings, and that the Court may issue a scheduling order permitting Plaintiffs to begin discovery at some point within the next few weeks.  Defendants respectfully urge the Court not to take this step and to stay discovery for the reasons more fully explained above: such discovery would be a significant waste of the parties' time and resources if the Fourth Circuit ultimately issues a ruling that narrows or ends this litigation, the discovery would almost certainly prove highly burdensome and entail substantial motion practice (before this Court and quite possibly the Fourth Circuit), and the Government would attempt to minimize

any delay by seeking expedited briefing in the Fourth Circuit.

At the very least, however, if the Court rejects the above argument and permits Plaintiffs to begin discovery, then the Government respectfully requests that the Court promptly grant § 1292(b) certification of the May 2 Order.  Swiftly granting certification would permit the Fourth Circuit to consider the important legal issues discussed above, and would at least partially accommodate the Government's weighty interest in having an appellate court decide at the earliest possible stage of the litigation whether Plaintiffs' claims may go forward in light of *Hawaii*. Prompt certification would likely also decrease, at least to some degree, the amount of intrusive and burdensome discovery that occurs prior to the Fourth Circuit deciding this potentially dispositive issue.  Finally, although defendants again reiterate that a stay of discovery is amply warranted under these circumstances, there is certainly no prejudice to Plaintiffs in granting § 1292(b) certification if Plaintiffs are permitted to conduct discovery while the appellate proceedings are ongoing.

In sum, the Court should grant § 1292(b) certification of the May 2 Order and stay discovery pending those § 1292(b) proceedings.  If the Court rejects that request and allows discovery to begin, however, at a minimum the Court should swiftly grant § 1292(b) certification of the May 2 Order.

## CONCLUSION

This Court should certify its May 2, 2019 Order for interlocutory review, and stay discovery pending completion of any § 1292(b) proceedings.

Dated: June 20, 2019                              Respectfully submitted,

                                                  JOSEPH H. HUNT
                                                  Assistant Attorney General

ROBERT K. HUR
United States Attorney

JOHN R. TYLER
Assistant Director, Federal Programs Branch

*/s/  Daniel Schwei*
DANIEL SCHWEI (Bar No. 96100)
ERIC J. SOSKIN (PA Bar No. 200663)
Senior Trial Counsel
ANDREW M. BERNIE
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington DC 20005
Tel: (202) 305-8693
Fax: (202) 616-8460
E-mail: daniel.s.schwei@usdoj.gov