# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT ("IRAP"), *et al*., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 8:17-cv-00361-TDC |
| DONALD TRUMP, in his official capacity as President of the United States, *et al*., | ) ) ) ) | |
| Defendants. | ) ) | |

|  |  |  |
|---|---|---|
| IRANIAN ALLIANCES ACROSS BORDERS, *et al*., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 8:17-cv-02921-TDC |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al*., | ) ) ) ) ) | |
| Defendants. | ) ) | |

|  |  |  |
|---|---|---|
| EBLAL ZAKZOK, *et al*., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:17-cv-02969-TDC |
| DONALD TRUMP, in his official capacity as President of the United States, *et al*., | ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' COMBINED REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF THIS COURT'S MAY 2, 2019 ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF DISCOVERY

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 3

I.     All of the Relevant Factors Support Certification of This Court's Order for Interlocutory Appeal. ................................................................................... 3

     A.    This Court's Order Turns On Controlling Questions of Law ................................ 3

     B.    Fair-Minded Jurists May Reasonably Disagree on These Questions .................... 4

          1.    Plaintiffs Fail to Meaningfully Address the Controlling Questions Here.................................................................................................... 4

          2.    Plaintiffs' Other Arguments for Why Disagreement Would Be Unreasonable Are Unpersuasive and Legally Incorrect............................ 6

     C.    Interlocutory Appeal Would Materially Advance the Ultimate Termination of This Litigation ................................................................. 10

     D.    This Case Presents Additional Exceptional Circumstances Warranting Certification. ........................................................................ 12

II.    Discovery Should Be Stayed Pending Completion of All § 1292(b) Proceedings. .......... 13

     A.    A Stay of Discovery Would Promote Judicial Economy ..................................... 13

     B.    Allowing Discovery Would Impose Significant Hardship on the Government............................................................................................. 15

     C.    Plaintiffs Have Not Established Any Cognizable Prejudice Associated With the Short Delay Requested Here .......................................................... 18

CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Alharbi v. Miller,*
   368 F. Supp. 3d 527 (E.D.N.Y. 2019) ...................................................................... 7

*Arab Am. Civil Rights League v. Trump,*
   Case No. 17-10310, 2017 WL 2501060 (E.D. Mich. June 9, 2017)........................... 14, 15, 16

*Cheney v. U.S. Dist. Court for Dist. Columbia,*
   542 U.S. 367 (2004)................................................................................................. 16, 17, 20

*Coal. For Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n,*
   Civ. No. CCB-06-2773, 2015 WL 4040425 (D. Md. June 29, 2015)................................ 10, 15

*Dist. of Columbia v. Trump,*
   344 F. Supp. 3d 828 (D. Md. 2018) .......................................................................... 2

*Emami v. Nielsen,*
   365 F. Supp. 3d 1009 (N.D. Cal. 2019) ................................................................... 7

*Estate of Alvarez v. Johns Hopkins Univ.,*
   Civ. A. No. TDC-15-0950, 2019 WL 1779339 (D. Md. Apr. 23, 2019)........................ 8, 10, 15

*Fannin v. CSX Transp., Inc,*
   873 F.2d 1438 (4th Cir. 1989)................................................................................... 4

*FCC v. Beach Commc'ns, Inc.,*
   508 U.S. 307 (1993).................................................................................................. 1, 5, 14

*Fiallo v. Bell,*
   430 U.S. 787 (1977).................................................................................................. 6

*Gantt v. Whitaker,*
   57 F. App'x 141 (4th Cir. 2003)................................................................................ 20

*Hawaii v. Trump,*
   233 F. Supp. 3d 850 (D. Haw. 2017) ........................................................................ 14

*In re Trump,*
   874 F.3d 948 (6th Cir. 2017)..................................................................................... 4, 8

*In re Trump,*
   --- F.3d ----, 2019 WL 2997909 (4th Cir. 2019).................................................... *passim*

*In re United States*,
  138 S. Ct. 443 (2017) ................................................................................ 10, 16

*Kerry v. Din*,
  135 S. Ct. 2128 (2015) ..................................................................................... 6

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972) ......................................................................................... 1

*McFarlin v. Conseco Servs., LLC*,
  381 F.3d 1251 (11th Cir. 2004) ...................................................................... 2

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) .............................................................................. 1, 8, 12

*Providence Journal Co. v. FBI*,
  595 F.2d 889 (1st Cir. 1979) .......................................................................... 17

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) .................................................................... 4, 10

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ......................................................................... 1, 5, 6, 7

*U.S. ex rel. Michaels v. Agape Senior Cmty., Inc.*,
  848 F.3d 330 (4th Cir. 2017) ........................................................................... 4

*United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*,
  173 F. Supp. 3d 320 (E.D. Va. 2016) .............................................................. 8

*United States v. Mendoza*,
  464 U.S. 154 (1981) ....................................................................................... 18

*United States v. Myers*,
  593 F.3d 338 (4th Cir. 2010) ........................................................................... 8

*Washington v. Trump*,
  Case No. C17-0141JLR, 2017 WL 2172020 (W.D. Wash. May 17, 2017) ....... 14, 16

## Statutes

28 U.S.C. § 1292(b) ............................................................................... *passim*

**Regulations**

Proclamation No. 9645, Enhancing Vetting Capabilities and Processes for Detecting
    Attempted Entry into the United States by Terrorists or Other Public Safety Threats,
    82 Fed. Reg. 45,161 (Sept. 27, 2017) ...................................................................................... 19

**Other Authorities**

Department of State, *Administrative Processing Information*,
    https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-
    processing-information.html ........................................................................................................ 19

## INTRODUCTION

In *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), the Supreme Court upheld the validity of Proclamation No. 9645 ("Proclamation"), concluding that constitutional challenges to the Proclamation are governed by *Kleindienst v. Mandel*, 408 U.S. 753 (1972)—or at most, by rational basis review—and that the Proclamation satisfies both standards. These are conclusions of law, not factual findings that might vary at different stages of a case. *Mandel* review is limited to "whether the Executive gave a 'facially legitimate and bona fide' reason for its action." *Hawaii*, 138 S. Ct. 2419 (quoting *Mandel*, 408 U.S. at 770). And rational basis review is limited to whether there is *any conceivable* rational basis for a decision, regardless of "whether the conceived reason for the challenged distinction *actually motivated* the" decisionmaker. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (emphasis added). Because the Supreme Court has already identified a conceivable basis for the Proclamation—*i.e.*, "persuasive evidence that the entry suspension has a legitimate grounding in national security concerns," *Hawaii*, 138 S. Ct. at 2421— and because the Proclamation also independently serves the Government's legitimate foreign-policy objective of "encourag[ing] foreign governments to improve their practices," *id.* at 2411, the Proclamation necessarily survives rational-basis review as a matter of law.

This Court nonetheless has allowed Plaintiffs' constitutional claims to proceed. The Government does not seek to re-litigate its motion to dismiss here. Section 1292(b), however, provides that a district court "shall" certify an order that it determines involves a "controlling question of law as to which there is substantial ground for difference of opinion" if appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). These requirements are plainly satisfied in this case, which also "involves a new legal question" and "is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009). Indeed, the Fourth Circuit recently emphasized these requirements in granting a mandamus petition,

-1-

reversing one of the key authorities on which Plaintiffs rely. *See In re Trump*, --- F.3d ----, 2019 WL 2997909, at *8 (4th Cir. 2019) (holding that failure to grant § 1292(b) certification was "a clear abuse of discretion," reversing *Dist. of Columbia v. Trump*, 344 F. Supp. 3d 828 (D. Md. 2018)).  As the Court explained, "[w]hen a district court determines that the statutory criteria are present . . . it has a duty . . . to allow an immediate appeal to be taken." *Id.* at *6.

Plaintiffs' opposition brief ("Pls.' Br.", ECF No. 290) confirms that certification is warranted, if not required, in these cases.  Plaintiffs do not dispute that the Court's May 2 order ("Order", ECF No. 277) involves controlling questions of law.  And although Plaintiffs assert that there is not substantial ground for disagreement on these questions, this contention does not survive scrutiny.  Plaintiffs barely engage with any of the ground-breaking holdings of this Court's Order, and indeed do not even *assert* that fair-minded jurists could not disagree with the Court's decision. Instead, Plaintiffs principally argue that no other judicial decisions conflict with this Court's opinion.  But this is false, and in any event irrelevant because there is no such requirement.

Additionally, as explained in the Government's opening brief ("Defs.' Br.", ECF No. 289), interlocutory appeal would also "materially advance the ultimate termination of the litigation." "This is not a difficult requirement to understand" and "means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *In re Trump*, 2019 WL 2997909, at *8 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)).  Here, resolution of the controlling questions of law in the Government's favor would end this litigation entirely.  Additionally, Plaintiffs wholly ignore that, even if the Fourth Circuit does not end this litigation entirely, its decision would still provide important guidance regarding the nature and scope of any further proceedings in these cases.

In short, certification would clearly be warranted even if this were an ordinary civil case.

But this is decidedly *not* an ordinary civil case.  As courts have repeatedly made clear, particularly in cases of paramount national importance like this one, a district court's discretion in deciding whether to grant § 1292(b) certification is not unlimited.  Like the case before the Fourth Circuit in *In re Trump*—which Plaintiffs themselves describe as involving "nearly identical" arguments, Pls.' Br. at 10—these cases similarly are "not only . . . extraordinary, [they] also ha[ve] national significance and [are] of special consequence." *In re Trump*, 2019 WL 2997909, at *6.  Consistent with *In re Trump*, this Court should grant Defendants' motion for certification here.

This Court should also stay discovery pending completion of the § 1292(b) proceedings.  A stay would plainly promote judicial economy because a decision from the Fourth Circuit will very likely either dispose of this litigation entirely, or at least provide significant guidance about the character and scope of future proceedings.  Additionally, a stay would avoid significant hardship to the Government in the form of discovery, which Plaintiffs once again confirm will be highly intrusive and burdensome, and which would certainly require substantial motions practice in this Court and potentially in the Fourth Circuit.  Consistent with decisions from the Supreme Court and the Fourth Circuit, this Court should exercise restraint and stay discovery, rather than allow Plaintiffs to plunge the parties and the Court into sensitive privilege disputes that threaten to undermine the separation of powers.  Finally, Plaintiffs have not established that granting a stay of discovery would cause them any cognizable prejudice; the harms they mention are undermined by the record, and the Government's requested stay here is likely to be of relatively short duration.

**ARGUMENT**

**I.     ALL OF THE RELEVANT FACTORS SUPPORT CERTIFICATION OF THIS COURT'S ORDER FOR INTERLOCUTORY APPEAL.**

**A.     This Court's Order Turns On Controlling Questions of Law**

In allowing these suits to proceed, this Court concluded that: (1) the Proclamation is subject

to rational basis review; (2) *Hawaii*'s conclusion that the Proclamation satisfies rational basis review does not foreclose Plaintiffs' challenges as a matter of law; (3) Plaintiffs' complaints adequately plead that the Proclamation flunks rational basis review despite recycling the same allegations the Supreme Court already considered; and (4) Plaintiffs' complaints adequately plead a violation of their *own* constitutional rights, including a cognizable liberty or property interest in the issuance of a visa to foreign national family members. *See* Defs.' Br. at 7-10. These are all "controlling question[s] of law" for § 1292(b) purposes. Each is a "pure question of law, *i.e.*, an abstract legal issue that the court of appeals can decide quickly and cleanly" without "delv[ing] beyond the surface of the record." *U.S. ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340-41 (4th Cir. 2017) (cleaned up). And each is "controlling" because review may be "completely dispositive of the litigation." *Fannin v. CSX Transp.*, 873 F.2d 1438 (4th Cir. 1989) (mem.); *see also In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017). Although Plaintiffs contend in conclusory fashion that "[t]he Government has satisfied *none* of the requirements for certification," Pls.' Br. at 1, they present no argument as to why the "controlling question" requirement is not satisfied.

### B.     Fair-Minded Jurists May Reasonably Disagree on These Questions

"A substantial ground for difference of opinion exists *where reasonable jurists might disagree* on an issue's resolution." *In re Trump*, 2019 WL 2997909, at *8 (quoting *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)) (emphasis supplied by *In re Trump*); *accord In re Trump*, 874 F.3d at 952 (6th Cir.). That standard is met for each of the questions of law Defendants have discussed. Plaintiffs' opposition largely does not engage with the substance of these questions, and it is apparent that there is (at a minimum) room for reasonable disagreement on each question. Plaintiffs' other arguments are similarly unpersuasive and misstate the law.

#### 1.     Plaintiffs Fail to Meaningfully Address the Controlling Questions Here

Despite the Government addressing at length why there is substantial ground for difference

of opinion on each of the identified controlling questions, *see* Defs.' Br. at 10-21, Plaintiffs almost entirely ignore that analysis.  On all four questions, however, this factor is satisfied.

    *First*, fair-minded jurists could disagree with this Court's conclusion that the Proclamation is subject to rational basis review.  *Hawaii* expressly states that *Mandel* provides the appropriate standard for "any constitutional claim concerning the entry of foreign nationals," 138 S. Ct. at 2420 n.5, and merely "assume[d]" "[f]or our purposes today" that it could apply rational basis review.  *Id.* at 2420; *see also* Defs.' Br. at 12-13.  Aside from an unexplained assertion that the *Hawaii* majority did not "abandon rational basis review," Pls.' Br. at 10, Plaintiffs offer no argument on this issue.  Indeed, their brief does not even mention or cite *Mandel*.

    *Second*, fair-minded jurists could disagree with this Court's conclusion that *Hawaii* does not foreclose challenges to the Proclamation under the rational-basis test.  Under rational basis review, courts ask whether "there is *any* reasonably conceivable state of facts that *could* provide a rational basis for the classification," and indeed "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the [decisionmaker]."  *Beach Commc'ns*, 508 U.S. at 313, 315 (emphases added); *see also* Defs.' Br. at 13-15, 18.  A fair-minded jurist could readily conclude that *Hawaii* already identified a rational basis for the Proclamation and that this conclusion is controlling regardless of what facts Plaintiffs might plead or elicit through discovery.  Again, Plaintiffs do not respond to any of this.  Similarly, Plaintiffs do not attempt to explain why the Proclamation's diplomatic objective of encouraging foreign governments to share information with the United States—which is independent of the national-security rationale—plausibly fails rational-basis review.  *See* Defs.' Br. at 18.  Instead, Plaintiffs assert generally "that rulings on a preliminary injunction do not foreclose further litigation on the merits."  Pls.' Br. at 8.  But the Supreme Court's *legal* conclusions are of course

binding on lower courts regardless of the procedural posture in which the Supreme Court renders them.  And the Court's rational-basis holding in *Hawaii* reflected a *legal conclusion*, not a provisional factual judgment.  At the very least, fair-minded jurists could so conclude.

*Third*, fair-minded jurists could disagree with this Court's conclusion that *these* complaints adequately plead a claim against the Proclamation.  The *Hawaii* majority considered virtually all of the allegations upon which Plaintiffs' complaints rely, including the three features on which this Court's opinion is principally based, *see* MTD Op. (ECF No. 276) at 34-38, and nonetheless concluded that "[t]he Proclamation does not fit [the] pattern" of past actions found "inexplicable by anything but animus," 138 S. Ct. at 2417-18, 2420 (citation omitted).  *See* Defs.' Br. at 15-19. A fair-minded jurist could conclude that these complaints do not suffice to state a claim under Rule 12(b)(6).  Again, Plaintiffs offer no response as to why it would be unreasonable to so conclude.

*Fourth*, fair-minded jurists could disagree with this Court's rejection of the Government's alternative bases for dismissal.  Both *Fiallo v. Bell*, 430 U.S. 787 (1977) and the plurality opinion in *Kerry v. Din*, 135 S. Ct. 2128 (2015), state that there is no cognizable liberty or property interest in an individual having foreign nationals—even family members—being issued a visa or being admitted into the country, and the Supreme Court has never upheld an Establishment Clause or equal protection claim premised on the right of an alien seeking admission to the country.  *See* Defs.' Br. at 19-21.  Plaintiffs again fail to dispute these points.

## 2. Plaintiffs' Other Arguments for Why Disagreement Would Be Unreasonable Are Unpersuasive and Legally Incorrect

Strikingly, Plaintiffs' opposition does not appear to even *argue* that reasonable jurists could not disagree with this Court's resolution of the controlling questions identified above.  Instead, Plaintiffs try to manufacture additional requirements for this prong of the § 1292(b) test.  But Plaintiffs' various arguments are both inaccurate and legally incorrect.

**a.**  Plaintiffs contend that there is no judicial disagreement on the questions Defendants have identified.  *See* Pls.' Br. at 7-10.  As a threshold matter, courts *have* reached contrary conclusions on these questions.  At least one district court has concluded that constitutional claims seeking to challenge the Proclamation are "foreclosed by the Supreme Court's decision in *Trump v. Hawaii*."  *Alharbi v. Miller*, 368 F. Supp. 3d 527, 565 (E.D.N.Y. 2019), *appeal filed*, No. 19-1570 (2d Cir. May 28, 2019).  Plaintiffs deride *Alharbi* as "conclusory," Pls.' Br. at 8 n.2, but the court's holding was plainly not dicta.  And the brevity of *Alharbi*'s analysis likely just reflects that the court considered it obvious that *Hawaii* precludes constitutional challenges to the Proclamation.  Additionally, another district court has separately observed that "[t]he Supreme Court has already concluded in reviewing the Proclamation that the Government has set forth a sufficient national security justification to survive rational basis review.'"  *Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1022-23 (N.D. Cal. 2019).  To the extent there is not *additional* judicial disagreement, moreover, that is simply a reflection of the fact that, following the Supreme Court's decision in *Hawaii*, at least four groups of plaintiffs voluntarily dismissed their claims.[1]  If no reasonable jurist could conclude that *Hawaii* actually foreclosed Plaintiffs' claims, it is highly unlikely that these sophisticated entities—who aggressively litigated against the Proclamation before *Hawaii*—would all elect to dismiss their claims after that decision.

In any event, contrary to the implication of Plaintiffs' argument, the "substantial difference" prong does not require preexisting judicial disagreement.  *See In re Trump*, 2019 WL 2997909,

---

[1] *See Hawaii v. Trump*, No. 1:17-cv-50, ECF No. 415 (D. Haw.); *Washington v. Trump*, No. 2:17-cv-141, ECF No. 217 (W.D. Wash.); *Pars Equality Ctr. v. Trump*, No. 1:17-cv-255, ECF No. 145 (D.D.C.); *Al-Mowafak v. Trump*, No. 3:17-cv-557, ECF No. 105 (N.D. Cal.).  Although one court recently allowed claims against the Proclamation to proceed, *see Arab-Am. Civil Rights League v. Trump*, No. 17-10310, ECF No. 138 (E.D. Mich.), this development does not change the overall analysis, and only underscores the need for prompt appellate resolution of these issues.

at *8 ("A substantial ground for difference of opinion exists *where reasonable jurists might disagree* on an issue's resolution."); *see also Estate of Alvarez v. Johns Hopkins Univ.*, 2019 WL 1779339, at *1 (D. Md. Apr. 23, 2019) ("[C]ourts find substantial grounds where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, *or if novel and difficult questions of first impression are presented*." (emphasis added)); *accord In re Trump*, 874 F.3d 952 (6th Cir.); *United States v. Myers*, 593 F.3d 338, 347 (4th Cir. 2010) ("novel privilege ruling" may warrant certification). The Supreme Court itself has noted the particular importance of certification in a case that "involves a new legal question or is of special consequence." *Mohawk Indus.*, 558 U.S. at 110-11. A rigid judicial-disagreement requirement does not logically follow from this instruction and, indeed, would prevent appellate consideration of many of the most important questions of first impression notwithstanding their novelty. *Cf. In re Trump*, 2019 WL 2997909, at *7 (discussing how "the district court was the first ever" to permit a claim to go forward, and this novelty supported certification). Thus, Plaintiffs' argument about the lack of judicial disagreement fails.[2]

   **b.** Plaintiffs also pursue a divide-and-conquer strategy, noting, *inter alia*, that the "mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient"; that "even [the presence of] novel legal issues" is insufficient by itself because district courts "are fully competent to decide those questions"; and that "[a] party's mere disagreement with a district

---

   [2] Plaintiffs cite *United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*, 173 F. Supp. 3d 320, 324 (E.D. Va. 2016) for the even more sweeping proposition that "even 'a disagreement with one circuit' is 'not enough to meet the high standard for a substantial ground for difference of opinion.'" Pls.' Br. at 9-10. But the court in *Thermcor* concluded that the substantial-ground requirement was not met as to a particular legal issue where the party seeking certification relied upon "a Seventh Circuit case . . . *that conflicts with a Fourth Circuit case*." 173 F. Supp. 3d at 324 (emphasis added). The decision merely stands for the proposition that the substantial-ground requirement is not met where binding appellate authority forecloses a movant's argument.

court's ruling does not warrant certification." Pls.' Br. at 7, 9, 1. Even if true, however, these statements do not accurately describe the full reasons supporting certification here. The Government has not merely identified "novel legal issues" or "a disputed issue that is a question of first impression." The Government has instead identified multiple controlling questions of law; these questions are unquestionably the subject of fair-minded disagreement; the resolution of these questions could materially advance the litigation by ending it; and the importance of these issues cannot be questioned. Indeed, just like in *In re Trump*, the novelty of Plaintiffs' claims is also apparent: Plaintiffs allege that a formal national-security and foreign affairs judgment of the President, made pursuant to express statutory authority, is unconstitutional because it was motivated by animus, and that even under rational-basis review they are entitled to discovery to prove their claim. Plaintiffs' attempt to refute straw-man versions of the Government's certification arguments does not change the novel, extraordinary nature of their claims.[3]

Moreover, the Government's motion is not based on "mere disagreement" with the Court's motion-to-dismiss opinion. *See* Pls.' Br. at 1, 6-7, 10. Every time a party seeks § 1292(b) certification, there will be some discussion of past arguments—that is the nature of the "substantial ground for difference of opinion" requirement. Plaintiffs' observation that this Court previously rejected Defendants' legal arguments does nothing to undermine Defendants' arguments that *other* fair-minded jurists might agree with the Government. Plaintiffs entirely fail to engage on that

---

[3] Plaintiffs briefly assert that the questions identified by the Government are not novel because this Court followed "the Fourth Circuit's clear guidance on how to balance Rule 12(b)(6)'s liberal pleading standard and the inquiry required under rational basis review." Pls.' Br at 10. But on this logic, the issues decided by the Fourth Circuit in *In re Trump* also were not novel because the court there merely applied Rule 12. That is not what it means for an issue to be novel. At a high enough level of generality, the standards for motions to dismiss are indeed "clear." That is not responsive to the Government's point that the *legal* questions the Court addressed are both novel and subject to a substantial ground for difference of opinion.

point and, if their arguments were correct, no party could ever obtain § 1292(b) certification.

**c.**   Finally, Plaintiffs argue that if the Supreme Court had expected courts to certify decisions adverse to the Government in cases challenging the Proclamation, it would have said so in *Hawaii*.  Pls.' Br. at 9 (citing *In re United States*, 138 S. Ct. 443, 445 (2017)).  But that argument begs the question by assuming that the Supreme Court contemplated Plaintiffs' claims surviving a motion to dismiss after *Hawaii*.  And in any event, *In re United States* arose in a very different procedural posture—the Supreme Court's intervention was necessary because the lower courts had refused to resolve the Government's threshold arguments—and thus it made sense for the Supreme Court to direct how the cases should proceed on remand.  Here, the Fourth Circuit has held that district courts must certify orders under § 1292(b) when the statutory criteria are satisfied, and the lack of an express statement from the Supreme Court does not relieve § 1292(b) of operative effect.

## C.   Interlocutory Appeal Would Materially Advance the Ultimate Termination of This Litigation

The final § 1292(b) requirement is also satisfied.  Plaintiffs do not dispute that reversal would "advance the litigation by ending it." *Coal. For Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*, 2015 WL 4040425, at *7 (D. Md. June 29, 2015); *see also In re Trump*, 2019 WL 2997909, at *8.  Indeed, courts have found this requirement satisfied even where reversal would not end the entire case, *see Reese*, 643 F.3d at 688, and where the period for fact discovery had already ended, *see Alvarez*, 2019 WL 1779339, at *2.  The requirement is thus certainly met where, as here, this litigation would end if the Fourth Circuit resolved the controlling questions of law in the Government's favor and where discovery has not yet begun.  And as discussed below, even if the litigation is not terminated, the Fourth Circuit's decision would undoubtedly provide valuable guidance regarding future proceedings.  *See* Part II.A, *infra*.  Again, Plaintiffs' responses on this factor are unpersuasive.

First, Plaintiffs contend that certification would not advance the litigation if this Court's Order is affirmed in its entirety.  But affirmance is always a possibility, which is why § 1292(b) requires only that the appeal "may" materially advance the ultimate termination of the litigation. Given the substantial grounds for difference of opinion on the four questions discussed above— and the reality that this litigation could end if the Fourth Circuit resolved almost any of them in the Government's favor—this is plainly not a basis for denying certification.

Second, Plaintiffs note that "every case involving denial of a motion to dismiss would conclude sooner if the denial were appealed and reversed," but not every denial of such a motion merits an interlocutory appeal.  Pls.' Br. at 12.  Of course, the materially-advance prong is only one requirement for certification; a movant must still identify at least one controlling question of law as to which there is substantial ground for difference of opinion.  District courts, moreover, have considerable (though not unlimited) discretion to determine whether those criteria are met. And district courts should exercise that discretion in light of the difficulty and importance of the questions presented.  There is no reason to distort the Government's arguments as implying that all denials of motions to dismiss should automatically receive § 1292(b) certification when the Government's arguments are instead focused on this extraordinary case.

More broadly, this motion does not require the Court to explore the outer boundaries of the materially-advance prong because, in this case, every possible consideration tilts in favor of certification.  The Court's Order involved a novel application of a new and directly on point Supreme Court decision, as to the very Proclamation at issue here, in a case raising a challenge to an action by the President himself on a subject of the utmost importance and national significance. And again, reversal on the questions of law identified by the Government—as to each of which a substantial ground for difference of opinion exists—would end this litigation in its entirety, and

avoid discovery which will be both highly burdensome and require substantial motions practice. *See* Part II, *infra*.  This final requirement is plainly satisfied.

> **D.      This Case Presents Additional Exceptional Circumstances Warranting Certification.**

Certification would thus be warranted here even if this were an ordinary civil case.  But this is not an ordinary civil case and case law makes clear that courts must consider that fact in the certification analysis.  Again, the Supreme Court has instructed (and the Fourth Circuit has reiterated this week) that "district courts should not hesitate to certify an interlocutory appeal" when a decision "involves a new legal question or is of special consequence." *Mohawk Indus.*, 558 U.S. at 110-11; *In re Trump*, 2019 WL 2997909, at *6; *see also* Defs.' Br. at 5 (additional cases).

Plaintiffs cannot seriously dispute that this consideration weighs heavily in favor of certification here.  Plaintiffs contend that "[a] case does not present 'truly extraordinary' circumstances under § 1292(b) just because it raises important issues going to the President's conduct."  Pls.' Br. at 13.  But Plaintiffs' authority for that proposition are two cases, one of which has now been reversed by the Fourth Circuit as "a clear abuse of discretion," *In re Trump*, 2019 WL 2997909, at *8, and the other being a case in which the Government has now sought similar mandamus relief.  *See In re Trump*, No. 19-5196 (D.C. Cir. July 8, 2019).

In any event, even if Plaintiffs' exceedingly abstract formulation of this analysis were correct, Plaintiffs wholly fail to address the circumstances that make this Court's Order of special consequence: Plaintiffs challenge an action by the President of the United States taken to address national-security and foreign-policy objectives of the United States; their claim is based on allegations of animus; they seek intrusive discovery into the President's decision-making process; and their claim concerns a Proclamation that has already been the subject of a Supreme Court decision in which the Court directly considered Plaintiffs' very same allegations and found, even

-12-

under this Court's narrow interpretation of that decision, that Plaintiffs are unlikely to succeed on the merits of their claims. Under these circumstances—and because the certification requirements are clearly satisfied—interlocutory review is unquestionably warranted, if not required.

## II.    DISCOVERY SHOULD BE STAYED PENDING COMPLETION OF ALL § 1292(B) PROCEEDINGS.

This Court should also stay discovery pending completion of the § 1292(b) proceedings. Granting a stay of discovery would promote judicial economy; would avoid significant hardships to the Government based on the sensitive, intrusive discovery that Plaintiffs intend to seek; and would not meaningfully prejudice Plaintiffs' interests.

### A.    A Stay of Discovery Would Promote Judicial Economy

Plaintiffs do not and obviously cannot dispute that termination of this case by the Fourth Circuit would significantly promote judicial economy. Instead, Plaintiffs assert that such an occurrence is "unlikely." Pls.' Br. at 19. This is incorrect for reasons discussed above. And even if the Fourth Circuit did not terminate this litigation, appeal would still promote judicial economy by clarifying the scope and nature of further proceedings in these cases, including the appropriate scope of any potential discovery. *See* Defs.' Br. at 22-24.

Plaintiffs contend that "the disputes that the Government now seeks to delay are unlikely to be affected by the Government's proposed appeal" because "the Government's proposed appeal does not concern the substance of any potential discovery dispute." Pls.' Br. at 19. As this Court previously noted, however, "a court's ruling on a motion to dismiss may assist in defining the contours of discovery." Stay Op. (ECF No. 255) at 13. Because the § 1292(b) appeal would involve the Fourth Circuit ruling on the Government's motion-to-dismiss arguments, that logic equally supports a stay here. Indeed, several other courts hearing challenges to past Executive Orders have recognized that, even if discovery disputes are not directly part of an appeal, the

appellate court's resolution of key legal issues will likely affect the course of future proceedings.[4]

Even if this Court were to allow discovery to proceed now, that would not necessarily bring this case any closer to resolution.  If the Fourth Circuit allowed Plaintiffs' claims to proceed, any discovery issues litigated now would likely need to be re-litigated in light of the legal framework announced by the Fourth Circuit.  *See* Stay Op. at 13.  For example, if the Fourth Circuit were to hold that rational-basis review applies but that such a claim "is not subject to courtroom fact-finding," *Beach Commc'ns, Inc.*, 508 U.S. at 315, the parties would then have to re-litigate what (if any) of Plaintiffs' requested discovery is relevant to the remaining claims.  In particular, given the well-established Supreme Court case law that a decisionmaker's *actual* motivations are irrelevant in a rational basis case, it is hard to see what foundation Plaintiffs would have for propounding discovery related to the alleged motives underlying the Proclamation.  The same would be true if the Fourth Circuit were to hold that Plaintiffs have plausibly stated a claim based on allegations different from the ones relied upon by this Court. *See* MTD Op. at 34-38.

Indeed, the Fourth Circuit's guidance about which facts are relevant to Plaintiffs' claims is particularly important given Plaintiffs' previously expressed intention to try to overcome the Government's privileges—including presidential communications privilege—based on a purported need for certain information.  *See* MTD Hr'g Tr. at 89-90.  In these circumstances, it simply does not make sense to proceed with discovery under a provisional legal framework,

---

[4] *See, e.g.*, *Washington v. Trump*, 2017 WL 2172020, at *2 (W.D. Wash. May 17, 2017) ("Although the Ninth Circuit is not considering discovery issues on appeal, it is likely to decide legal issues that will impact the court's resolution of the parties' discovery disputes here by clarifying 'the applicable law or relevant landscape of facts that need to be developed.'" (quoting *Hawaii v. Trump*, 233 F. Supp. 3d 850, 856 (D. Haw. 2017)); *Arab Am. Civil Rights League v. Trump*, 2017 WL 2501060, at *2 (E.D. Mich. June 9, 2017) ("Any decision by the Supreme Court will . . . provide guidance regarding the appropriate scope of discovery, and may help to resolve anticipated disputes related to Plaintiffs' outstanding discovery requests.").

instead of permitting a short delay to await controlling legal guidance from the Fourth Circuit.

Finally, Plaintiffs cite two decisions declining to stay discovery even though interlocutory appeal may have terminated the litigation, *see* Pls.' Br. at 18, but each of those cases arose in highly different circumstances.  In *Alvarez*, fact discovery was already "largely complete," there was "momentum toward resolving remaining discovery disputes," and it would have been "particularly inefficient" to "stop that process now and restart it after an appeal[.]" 2019 WL 1779339, at *2. Similarly, in *Coalition For Equity & Excellence In Maryland Higher Educ. v. Maryland Higher Educ. Comm'n*, 2015 WL 4040425 (D. Md. June 29, 2015), the parties were in the midst of briefing on remedies, so the court required that briefing to be completed but then invited the defendant to "refile[] a motion to stay after briefing on remedies is complete," at which point "the court will revisit the issue[.]" *Id.* at *8.  Here, there are no ongoing proceedings that would be inefficient to postpone; the inefficient path would be to start discovery now and then have those resources wasted (if the Fourth Circuit terminates these cases) or require re-litigation of the same disputes in light of the Fourth Circuit's guidance (if the cases are allowed to continue).  *Cf.* Stay Op. at 12.

## B.    Allowing Discovery Would Impose Significant Hardship on the Government

A stay is also warranted to avoid the significant burdens that discovery is likely to entail. Notably, Plaintiffs have once again declined to limit or even clarify the discovery they intend to seek.  And the record already confirms that Plaintiffs intend to pursue intrusive, sensitive, and highly burdensome discovery.  *See* Defs.' Br. at 22-24.  Plaintiffs' unwillingness to limit—or even fully describe—the discovery they intend to seek should itself foreclose their demand to immediately proceed with discovery, even while a potentially dispositive appeal is pending.

Rather than making any effort to limit the burdens of such discovery, Plaintiffs instead argue that "the obligation to litigate a case in the ordinary course is not a 'hardship' sufficient to justify a stay."  Pls.' Br. at 17.  But this argument is contrary to the numerous courts—including

this Court—that have previously granted stays based upon the likely burdens of discovery.[5] Indeed, in *In re Trump*, the Fourth Circuit granted a stay of district court proceedings pending conclusion of the appeal—thereby confirming that discovery involving the Chief Executive is a hardship sufficient to justify a stay.  *See* No. 18-2486, ECF No. 9 (4th Cir. Dec. 20, 2018).

Plaintiffs' argument that discovery should begin now appears to be rooted in their view that these cases are ordinary civil actions.  *See, e.g.*, Pls.' Br. at 18 ("[T]he Government is now in the same position as any other defendant whose motion to dismiss is denied: it must begin discovery."). As discussed above, however, these cases are far from ordinary. Nor is the discovery Plaintiffs seek ordinary: Plaintiffs here are seeking discovery into (among other things) the foreign-policy and national-security recommendations that were provided to the President by his Cabinet.  In these circumstances, and contrary to Plaintiffs' argument, the Supreme Court has made clear that district courts are *required* to consider the burdens of discovery when deciding how the case should proceed.  *See Cheney v. U.S. Dist. Court for Dist. Columbia*, 542 U.S. 367, 385 (2004) ("The high respect that is owed to the office of the Chief Executive is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery[.]" (modifications omitted)); Defs.' Br. at 23.  Despite Plaintiffs' repeated assertions that these cases are routine civil matters, they make no effort to explain how their argument is consistent with *Cheney*.  *See also In re Trump*, 2019 WL 2997909, at *6 (describing a case as "extraordinary," having "national significance," and being of "special consequence," because "to allow such a suit to go forward in the district court

---

[5] *See* Stay Op. at 13 ("Until the legal landscape is charted by the Supreme Court, discovery will be a fraught enterprise, steeply taxing both the parties and this Court."); *see also Arab Am. Civil Rights League*, 2017 WL 2501060, at *2-3; *Washington*, 2017 WL 2172020, at *4; *cf. In re United States*, 138 S. Ct. at 445 (district court should have stayed order requiring completion of administrative record and "first resolved the Government's threshold arguments" because "those arguments, if accepted, likely would eliminate the need for the District Court to examine a complete administrative record").

without a resolution of the controlling issues by a court of appeals could result in an unnecessary intrusion into the duties and affairs of a sitting President").

Moreover, even if Plaintiffs were correct that the Government must point to some burden or consequence "that it would not otherwise bear in the ordinary course of litigation," Pls.' Br. at 17, that standard would be amply satisfied here. First, the prospect of discovery into the President's deliberations with his closest advisors itself threatens the separation of powers. *See Cheney*, 542 U.S. at 382. Second, because Plaintiffs are seeking documents that are protected from disclosure by, *inter alia*, the deliberative process and presidential communications privileges, moving forward with discovery will prompt "executive privilege [to be] asserted," which then means "coequal branches of the Government are set on a collision course." *Id.* at 389. Third, to the extent this Court orders disclosure of the privileged documents, that is also harm that can never be recovered if the Fourth Circuit later terminates this litigation or holds that the privileged documents are legally irrelevant. *Cf. Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) ("Once the documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time."). Thus, moving forward with discovery will not simply accelerate discovery burdens that are inevitable; it will instead place the Judiciary on a collision course with the Executive Branch and threaten the Executive Branch's constitutionally-based confidentiality interests—all of which may be wholly unnecessary. Proceeding with discovery now, while a potentially dispositive appeal is pending, would thus be contrary to the instruction that separation-of-powers conflicts "should be avoided whenever possible." *Cheney*, 542 U.S. at 390.

Separately, Plaintiffs try to undermine the Government's claim of hardship by pointing to this Court's prior statement that "the Government has the resources to litigate without significant hardship or prejudice." Stay Op. at 14. As *Cheney* and the above discussion makes clear, however,

the burden to the Government is not merely a resource issue—it is also that proceeding with discovery now will precipitate unnecessary and unwarranted separation-of-powers conflicts between two coordinate Branches of Government.  In any event, the Government has substantial resources because the agencies involved are tasked with executing numerous public functions.  *Cf. United States v. Mendoza*, 464 U.S. 154, 159-61 (1981).  That is all the more reason why this litigation should not proceed in a wasteful or inefficient manner—because resources devoted to litigating these cases will come at the expense of other important public functions.[6]

### C.    Plaintiffs Have Not Established Any Cognizable Prejudice Associated With the Short Delay Requested Here

The third factor also supports a stay because Plaintiffs have not demonstrated that the short delay requested here would cause them any cognizable prejudice.  As an initial matter, Plaintiffs have no basis for assuming that an interlocutory appeal would result in "several years" of proceedings.  Pls.' Br. at 11.  To the contrary, the history of these cases confirms that appellate courts, up to and including the Supreme Court, are more than capable of acting expeditiously.  Moreover, the Government has previously pledged that, although it does not believe that interlocutory appeal will actually delay resolution of these lawsuits, it will nonetheless request expedited proceedings before the Fourth Circuit to minimize any potential delay in these cases.  Thus, the requested delay here is likely to be a matter of months—not years.  And even if the Court were concerned about the time required for an interlocutory appeal, that would not be a basis for

---

[6] Plaintiffs also seek to minimize the hardship to the Government associated with discovery by asserting that "[t]he Government regularly receives and processes Freedom of Information Act requests far more elaborate, and far more likely to result in voluminous results, than the discovery requests that are likely to arise here." Pls.' Br. at 12.  The premise of this argument is dubious, but even if true, the argument would only further confirm that discovery need not occur now.  If FOIA is comparable to discovery as Plaintiffs suggest, then Plaintiffs will not be harmed by the requested stay because they can still resort to FOIA requests to obtain information—as they have already done and are actively pursuing through parallel litigation.  *See IAAB*, ECF No. 66 at 24.

denying the requested stay entirely; instead, the Court could grant a stay for only a fixed period of time (*e.g.*, six months), subject to revisiting at that time.  At a minimum, it would make sense to grant a stay for the short period of time necessary to know whether the Fourth Circuit has accepted the § 1292(b) interlocutory appeal and to know the overall schedule associated with that appeal.

Particularly given the short duration of the Government's requested stay, Plaintiffs have not established that granting the stay would cause them any harm.  Indeed, each example that Plaintiffs rely on underscores that it is wholly speculative to conclude that the stay here would prejudice them.  First, Plaintiffs rely on Eblal Zakzok's separation from his daughter.  *See* Pls.' Br. at 15.  But the record here reflects that Mr. Zakzok is still waiting for his I-130 petition to be approved, *see Zakzok* Am. Compl. (ECF No. 62) ¶ 67, and the Proclamation has no effect on the timing of DHS's processing of those petitions.  Similarly, Plaintiffs rely on *IAAB* Jane Doe #5's separation from her son.  *See* Pls.' Br. at 15.  But her son had his visa interview in March 2017— before the Proclamation was even issued, and while EO-2's entry suspensions were enjoined— and apparently his visa was refused at that time, subject to further processing that may overcome the refusal.  *See IAAB* 2d Am. Compl. (ECF No. 78) ¶ 15; Department of State, Administrative Processing     Information,     https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html.  Based on the record available, therefore, it appears that Jane Doe #5's son's visa application has been refused (at least initially) for reasons unrelated to the Proclamation, and thus it is speculative whether the short stay here would cause any harm.  Finally, Plaintiffs also rely on *IRAP* Jane Doe #2 and other unspecified Plaintiffs who "continue to fear that family members who are refugees in other countries" could suffer harm.  Pls.' Br. at 15.  But the Proclamation has nothing to do with refugee resettlement, *see* Procl. § 6(e), and the refugee-related claims have now been dismissed.  *See* ECF No. 268.  Thus, any potential

harm to refugees abroad is irrelevant to the stay analysis for the remaining claims.[7]

Plaintiffs' opposition fails to provide any reason why discovery in these cases must begin *now*, and therefore the proper course—particularly in light of the "judicial deference and restraint" the Supreme Court has required in litigation against the Chief Executive, *Cheney*, 542 U.S. at 385—is for this Court to certify its May 2 Order for interlocutory appeal, and also stay all discovery pending completion of those interlocutory appeal proceedings.

*      *      *      *

For all the reasons discussed above, both § 1292(b) certification and a stay of discovery are manifestly justified here.  If the Court rejects the Government's request to stay discovery, however, at the very least the Court should promptly grant certification of its Order.  *See* Def.'s Br. at 25-26.  Plaintiffs offer no explanation as to how an interlocutory appeal could plausibly prejudice them if they are simultaneously allowed to pursue their claims in district court.[8]

## CONCLUSION

This Court should certify its May 2, 2019 Order for interlocutory review, and stay discovery pending completion of any § 1292(b) proceedings.

Dated: July 12, 2019                    Respectfully submitted,

                                        JOSEPH H. HUNT
                                        Assistant Attorney General

---

[7] Similarly irrelevant are Plaintiffs' cited news reports regarding harms suffered by non-parties.  *See* Pls.' Br. at 15-16.  The Fourth Circuit "has consistently held that newspaper articles are inadmissible hearsay to the extent that they are introduced to prove the factual matters asserted therein." *Gantt v. Whitaker*, 57 F. App'x 141, 150 (4th Cir. 2003).

[8] To be clear, the Government does not suggest that certification without a stay would be an appropriate resolution of this motion and reserves the right to seek further relief if discovery is permitted to go forward.  The Government merely observes that there is no plausible harm to Plaintiffs from allowing certification if this Court denies the stay request.

ROBERT K. HUR
United States Attorney

JOHN R. TYLER
Assistant Director, Federal Programs Branch

*/s/  Daniel Schwei*
DANIEL SCHWEI (Bar No. 96100)
Senior Trial Counsel
ANDREW M. BERNIE (DC Bar No. 995376)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington DC 20005
Tel: (202) 305-8693
Fax: (202) 616-8460
E-mail: daniel.s.schwei@usdoj.gov